UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
UNITED STATES OF AMERICA
                                              :
    - v. -                         :
                                                    INDICTMENT
                                              :
SANDY ANNABI,
ZEHY JEREIS, and                              :      10 Cr. 007
ANTHONY MANGONE,
                                              :

                                              :
           Defendants.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

COPY

## COUNT ONE

### (Conspiracy To Accept Corrupt Payments)

The Grand Jury charges:

### Relevant Persons And Entities

1.    The City of Yonkers is located in Southern Westchester County, New York, and has a population of approximately 200,000 residents.  The legislature for the City of Yonkers (hereafter the "City Council") is divided into six separate Council Districts and consists of seven elected members, including the City Council President.  The City Council's primary function is to consider and vote on the City's budget, zoning changes, and other legislation.

2.    On or about November 6, 2001, November 4, 2003, and November 8, 2005, SANDY ANNABI, the defendant, was elected and then reelected Councilwoman to represent the Second District of the City of Yonkers.  During the later part of her third term in office through December 2009, ANNABI also served as the City Council's Majority Leader.

3.   At all times relevant to this Indictment:

a.   SANDY ANNABI, as a Councilwoman for the Second District of the City of Yonkers, was an agent of a State or local government, and any agency thereof, as that term is used in Section 666(a)(1) of Title 18, United States Code.

b.   The City of Yonkers received federal aid from the United States government, including but not limited to, in a one-year period, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of federal assistance, as set forth in Section 666(b) of Title 18, United States Code.

4.   From in or about fall 2003 through in or about fall 2007, ZEHY JEREIS, the defendant, was the Chairman of the Yonkers Republican Party.  As the Party Chairman, JEREIS's duties were to promote the Republican Party in Yonkers and to advance the interests of Republican elected officials and candidates.

5.   At times relevant to this Indictment, ANTHONY MANGONE, the defendant, was an attorney engaged in the practice of law, whose office was located in Hawthorne, New York.

### The Conspiracy

6.   From in or about 2004 through in or about December 2009, in the Southern District of New York and elsewhere, SANDY ANNABI, ZEHY JEREIS, and ANTHONY MANGONE, the defendants, together with others known and unknown to the Grand Jury, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to commit

2

offenses against the United States, to wit, giving and receiving corrupt payments in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 666(a)(2).

7. It was an object of the conspiracy that ZEHY JEREIS, and later ANTHONY MANGONE and others, secretly gave SANDY ANNABI monetary payments and other things of value to influence and reward her for taking official action or inaction on matters over which she exercised discretionary authority as specific opportunities arose, including her support for lucrative real estate development projects within the City of Yonkers.

8. It was a further object of the conspiracy to conceal both the illegal payments accepted by SANDY ANNABI and the corrupt agreement.

<u>Means And Methods Of The Conspiracy</u>

9. To achieve the unlawful objects of the conspiracy, SANDY ANNABI, ZEHY JEREIS, and ANTHONY MANGONE used the following means and methods:

<u>Corrupt Payments And Benefits To ANNABI From
JEREIS, MANGONE, And Others</u>

10. As the chairman of the Yonkers Republican Party, ZEHY JEREIS used his considerable influence and contacts to assist SANDY ANNABI in getting elected to the Yonkers City Council in 2001 and then reelected in 2003 and 2005.

11. Beginning in or about early to mid-2004, ZEHY JEREIS secretly gave SANDY ANNABI money and purported loans she

3

used to finance the purchase of two residential properties located within the City of Yonkers but outside of ANNABI's Council District.  ANNABI was required by state and local law to live within her Council District.  Accordingly, she concealed the fact that she lived in one of the houses that JEREIS helped her finance, which was located outside of her Council District.

12.  Because ANNABI could not legally qualify to maintain her position as a Councilwoman in the City of Yonkers if she lived outside of her Council District, JEREIS secretly funded ANNABI's purchase of a cooperative apartment located within the Second Council District.  JEREIS paid for the purchase of the apartment for the benefit of ANNABI, and he paid for expenses to maintain the apartment, including the monthly mortgage, maintenance fee, cable, and electric bills.  In addition, (1) JEREIS made payments toward ANNABI's lease of a Mercedes Benz, her student loan and her purchases of real estate, and (2) MANGONE and JEREIS gave SANDY ANNABI approximately $30,000 in cash.  Specifically, SANDY ANNABI, received at least the following concealed financial benefits from JEREIS and/or MANGONE:

| Date | Benefit | Amount |
|------|---------|--------|
| May 5, 2004 | JEREIS check to ANNABI; money used for down payment on purchase of Patton Drive, Yonkers, New York | $50,000 |

4

| Date | Benefit | Amount |
|---|---|---|
| June 8, 2004 | JEREIS check to ANNABI; money used for down payment on purchase of Bacon Place, Yonkers, New York | $10,000 |
| November 30, 2004 | JEREIS check to ANNABI; money used for down payment on purchase of co-op apartment at Rumsey Road, Yonkers, New York | $7,200 |
| February 10 and 14, 2005 | JEREIS made 2 payments to a real estate attorney on ANNABI's behalf for her closing on Rumsey Road, Yonkers, New York | $11,500 |
| September 27, December 8, 2005 | JEREIS made 2 payments to Ray Catena Mercedes on ANNABI's behalf | $10,000 |
| January 2004 - January 2006 | JEREIS made 21 payments for ANNABI's student loan | $7,378.14 |
| April 2005 - August 2008 | JEREIS made 36 payments for ANNABI's mortgage at     Rumsey Road, Yonkers, New York | $14,627.62 |
| April 2005 - August 2008 | JEREIS made 39 payments for ANNABI's monthly maintenance charge at     Rumsey Road, Yonkers, New York | $20,199.73 |

| Date | Benefit | Amount |
|------|---------|--------|
| September 2005-August 2008 | JEREIS made 31 payments for ANNABI's Cablevision service at    Rumsey Road, Yonkers, New York | $4,879.95 |
| January 2006 - August 2008 | JEREIS made 28 payments for ANNABI's Con Edison service at    Rumsey Road, Yonkers, NY | $1,173.02 |
| June 2006 | MANGONE and JEREIS gave cash to ANNABI | $30,000 |
| | TOTAL = | $166,958.46 |

13.   The payments described in paragraph twelve were made to influence and reward SANDY ANNABI for taking and agreeing to take favorable official action as specific opportunities arose.   Among others, ANNABI took the below-described favorable official actions while she was receiving this stream of financial benefits from her co-conspirators.

**The Longfellow Project**

14.   Starting in or about 2003, a developer (hereafter "Developer No. 1") proposed to develop a tract of land located within the City of Yonkers and partially within the City Council District represented by SANDY ANNABI (hereafter "the Longfellow Project").   Developer No. 1 proposed to renovate two vacant and

dilapidated schools owned by the City and to transform the structures into market-rate housing.

15.   For the Longfellow Project to proceed, the City of Yonkers needed to transfer properties that were located partially within SANDY ANNABI's Council District to Developer No. 1.   In exchange for the City's agreement to transfer the properties, Developer No. 1 agreed to transfer land it owned located near the Longfellow Project to the City of Yonkers.

16.   SANDY ANNABI initially opposed the Longfellow Project.  During a City Council meeting on or about June 14, 2005, ANNABI proclaimed her strong opposition to the project stating that: "[e]ven if the entire community supported [it], I would be opposed...." and that the project was "outrageous" and a "slap in the face to the taxpayers of Yonkers..."  Despite considerable effort, Developer No. 1 was unable to move the project forward in the face of ANNABI's opposition.

17.   In or about April 2006, Developer No. 1 hired ANTHONY MANGONE to assist it in persuading SANDY ANNABI to support the Longfellow Project.

18.   Shortly thereafter, in or about late April or May 2006, ANTHONY MANGONE arranged a meeting between a representative of Developer No. 1 and ZEHY JEREIS at MANGONE's Hawthorne, New York law office.  During the meeting, MANGONE and a representative of Developer No. 1 explained to JEREIS that the

7

Longfellow Project could not proceed because it was located, in part, in SANDY ANNABI's Council District and she opposed the project. JEREIS advised a representative of Developer No. 1 that JEREIS could assist Developer No. 1 by persuading ANNABI to support the project.

19. In or about June 2006, ANTHONY MANGONE told Developer No. 1, in substance and in part, that in order for the project to proceed, Developer No. 1 would have to pay SANDY ANNABI approximately $30,000 in exchange for her support of the project. MANGONE directed a representative of Developer No. 1 to give MANGONE the money, in cash, and indicated that MANGONE would arrange to get the money to ANNABI. MANGONE further advised a representative of Developer No. 1, in substance and in part, that ANNABI would be happy to get the money since she could use the money for an upcoming trip she was taking.

20. In or about June 2006, having invested significant time and money into the Longfellow Project, a representative of Developer No. 1 agreed to ANTHONY MANGONE's demand and brought MANGONE approximately $30,000 in cash to give to SANDY ANNABI. A representative of Developer No. 1 also paid MANGONE an additional $10,000 in cash MANGONE requested as his fee for legal services.

21. On or about July 10, 2006, ANTHONY MANGONE sent an e-mail to Developer No. 1 advising a representative of Developer No. 1 that the City Council would have an appraisal done of the

property involved in the Longfellow Project for "her [ANNABI's]
own selfish political gain" so that "she has cover."  When a
representative of Developer No. 1 expressed concern about the
appraisal, MANGONE advised a representative of Developer No. 1
"not to worry" because the appraisal would be done by ZEHY
JEREIS.

22.  On or about July 20, 2006, SANDY ANNABI's
administrative assistant sent an e-mail to ANNABI that ANNABI
received while on a trip to Jordan asking whether the "new and
changed" Longfellow Legislation should be put on the agenda for
the August 15, 2006 Council meeting.  On or about July 25, 2006,
ANNABI responded by e-mail directing her administrative assistant
not to put the legislation on the agenda because she was planning
on extending her trip in Jordan and might not be returning by
August 15th.  ANNABI further instructed her assistant to call "Z"
[ZEHY JEREIS] and let him know that the Longfellow legislation
had to be revised.

23.  Shortly after a representative of Developer No. 1
gave the $30,000 cash bribe to SANDY ANNABI through ANTHONY
MANGONE, ANNABI made several substantial cash and credit card
purchases.  On or about June 26, 2006, ANNABI's previously
purchased airline ticket to Jordan was upgraded to business class
seat 1A (the flight had no first class section) using a cash
payment of $3,864.20.  Shortly before that, ANNABI's previous

9

purchase of her coach class ticket to Jordan was refunded to her
credit card for $1,297.20.

24.   In or about late June or early July 2006, ANNABI
went to a jewelry store in Westchester County and special ordered
a woman's Rolex watch with a Mother of Pearl diamond bezel dial.
ANNABI picked up the watch from the jeweler after her return from
Jordan and paid $3,847.31 in cash.

25.   On or about August 22, 2006, ANNABI went to the
same jeweler and purchased an 18-karat white gold diamond cross
necklace for $3,251.25, which she charged on her credit card.

26.   In or about September 2006, at a City Council
meeting, ANNABI reversed her long-held opposition to the
Longfellow Project and voted in favor of making Developer No. 1
the designated developer of the Longfellow Project.  Obtaining
designated developer status was the first in a series of
favorable actions Developer No. 1 needed from the Yonkers City
Council and the City of Yonkers for the Longfellow Project to
proceed.

### The Ridge Hill Development Project

27.   A large developer (hereafter "Developer No. 2")
proposed the development of an approximately 81-acre tract of
land located within the Ridge Hill section of the City of Yonkers
known as "the Ridge Hill Village Center" (hereafter "the Ridge
Hill Project").  The Ridge Hill Project proposed to establish

retail shopping, restaurants, office space, hundreds of
residential housing units, and a hotel and conference center.
SANDY ANNABI was an outspoken critic of the proposed Ridge Hill
Project.

28. For the proposed Ridge Hill Project to proceed,
Developer No. 2 needed to persuade the Yonkers City Council to
change the local zoning law to allow for mixed-use development on
the proposed Ridge Hill Development site.  Local law also
provided that before any such change in the local zoning law
could be made, the proposal had to be favorably reviewed by the
Westchester County Planning Board.  On or about July 7, 2005, the
Westchester County Planning Board recommended against the
proposed zoning change for the Ridge Hill Project.

29. At the time when the Westchester County Planning
Board issued its negative recommendation, Yonkers law provided
that the County's negative recommendation could only be
overridden by a "super majority" vote of the Yonkers City
Council, i.e., a majority plus one, or at least five of the seven
City Council members.  In the summer of 2005, when the
Westchester County Planning Board issued its negative
recommendation, only four of the seven Yonkers City Council
members supported the project.  Developer No. 2 and supporters of
the Ridge Hill Project needed one more Council member to back the
project for it to move forward.

11

30.   On or about November 22, 2005, in order to circumvent the super majority requirement, the Yonkers City Council voted 4-3 to amend the Yonkers City Zoning Code to permit the City Council to approve a zoning change, in the face of a negative recommendation by the Westchester County Planning Board, with a majority rather than a super majority of votes, i.e., with four as opposed to five votes.  Three Council members, including SANDY ANNABI, voted against this legislation.

31.   On or about November 23, 2005, SANDY ANNABI, along with the two other dissenting Council members and others, filed a lawsuit seeking to block and overturn the City Council's amendment to the zoning laws that permitted the approval of the project by a mere majority vote.  ANNABI was designated as the lead plaintiff in the civil action.

32.   On or about December 9, 2005, the Yonkers City Council voted to approve the zoning change for the Ridge Hill Project by a 4-3 vote despite SANDY ANNABI's continuing opposition and pending lawsuit.  Consistent with her historic opposition to the project, ANNABI voted against the project.

33.   On or about May 2, 2006, a New York State Supreme Court Judge who was presiding over SANDY ANNABI's lawsuit ruled in ANNABI's favor and held that the Council's vote to change the City of Yonkers Zoning Code was illegal and thus null and void. The court ruling effectively reinstated the super majority

12

requirement that the zoning change for the Ridge Hill Project be approved by at least five votes.

34.   Representatives of Developer No. 2 had made repeated unsuccessful behind-the-scenes efforts to convince SANDY ANNABI to vote in favor of the Ridge Hill Project.  ANNABI repeatedly rejected efforts by Developer No. 2 to address any concerns that she had about the project and rebuffed efforts by Developer No. 2 or its lobbyists to persuade her.

35.   On or about June 2, 2006, ZEHY JEREIS was introduced to representatives of Developer No. 2 at a lunch meeting in a Brooklyn restaurant.  During this meeting and shortly afterward, JEREIS told representatives of Developer No. 2, in substance and in part, that he could arrange a meeting among representatives of Developer No. 2, SANDY ANNABI and JEREIS to discuss whether ANNABI would support the Ridge Hill Project.

36.   A week later, on or about June 9, 2006, SANDY ANNABI and ZEHY JEREIS met with representatives of Developer No. 2 at a restaurant.  At or near the end of that meeting, JEREIS asked one of Developer No. 2's representatives for a consulting job.

37.   Just five days later, on or about June 14, 2006, after a second meeting between ZEHY JEREIS, SANDY ANNABI, and Developer No. 2's representatives, ANNABI reversed her opposition to the Ridge Hill Project and agreed to support it.

13

38. The next day, on or about June 15, 2006, SANDY ANNABI issued a press release -- actually drafted by representatives of Developer No. 2 and ZEHY JEREIS -- informing the public that she was now going to support the Ridge Hill Project.

39. During the time period that ZEHY JEREIS was assisting Developer No. 2 in securing SANDY ANNABI's support for the Ridge Hill Project, JEREIS repeatedly asked representatives for Developer No. 2 to give him a consulting job. By on or about June 28, 2006, JEREIS and representatives of Developer No. 2 reached an agreement in principle in which Developer No. 2 agreed to give JEREIS a job sometime after ANNABI formally voted in favor of the Ridge Hill Project.

40. At a special City Council meeting on or about July 11, 2006, SANDY ANNABI voted in favor of the zoning change for the Ridge Hill Project. ANNABI's switched vote provided the fifth vote needed to secure a super majority of the Yonkers City Council members. The zoning change was approved by a vote of 5-2.

41. In or about October 2006, ZEHY JEREIS signed a consulting contract with Developer No. 2 whereby Developer No. 2 agreed to pay JEREIS $60,000, or $5,000 per month for 12 months, to serve as a "real estate consultant." JEREIS was not a licensed real estate broker and had little or no relevant

experience in real estate development.   The contract was backdated to August 1, 2006 and JEREIS began receiving his $5,000 monthly payments retroactively starting with the August 2006 payment.

42.   Although his consulting contract with Developer No. 2 required him to submit monthly reports detailing what work he had actually done for Developer No. 2, JEREIS failed to submit any monthly reports until on or about March 12, 2007 -- after news reports about federal subpoenas pertaining to a federal investigation surfaced.   On March 12, 2007, JEREIS sent a representative of Developer No. 2 an e-mail attaching seven months' worth of monthly reports, dating back to August 2006, that purported to describe the work JEREIS did for Developer No. 2.

### Concealment Of The Corrupt Agreement

43.   Because (i) the conspiracy was ongoing, (ii) further action was required by the City of Yonkers for Developer No. 1 and Developer No. 2's projects to be completed, and (iii) SANDY ANNABI was a high-level public official at the time the corrupt payments were made, it was a necessary part of the agreement to conceal from the City of Yonkers and the public the illegal payments ANNABI received.   SANDY ANNABI, ZEHY JEREIS, and ANTHONY MANGONE took steps to conceal the corrupt agreement, including the following:

15

a. SANDY ANNABI failed to disclose to other City Council members, City of Yonkers employees, and the public her receipt of the illegal benefits she received from JEREIS and MANGONE.

b. SANDY ANNABI affirmatively concealed the illegal benefits she received from JEREIS and MANGONE by filing Financial Disclosure Statements with the City of Yonkers for the reporting years 2004, 2005, 2006, and 2007 that intentionally omitted the illegal payments.

c. SANDY ANNABI failed to report the illegal payments she received from ZEHY JEREIS and ANTHONY MANGONE to the Internal Revenue Service ("IRS") on her U.S. Federal income tax returns, Form 1040.

d. ZEHY JEREIS purchased U.S. Postal Money orders and used them to pay SANDY ANNABI's mortgage payments for      Rumsey Road, the apartment in ANNABI's City Council District.

e. After the federal investigation became public, ZEHY JEREIS submitted reports to Developer No. 2 purporting to reflect work that he had done in connection with the consulting contract he demanded from Developer No. 2.

f. After news of an investigation became public, ZEHY JEREIS falsely told a person involved in Developer No. 2's discussions with JEREIS that he had not received a consulting contract from Developer No. 2.

g. ANTHONY MANGONE attempted to conceal the illegal conduct by preventing its discovery by a federal grand jury and federal law enforcement officials who were investigating ANNABI's corrupt relationship with JEREIS during and in the course of the conspiracy by, among other things, instructing Developer No. 1 not to tell an attorney representing Developer No. 1 in the criminal investigation that representatives of Developer No. 1 had

16

given MANGONE $30,000 in cash to give to ANNABI.

h.   MANGONE further attempted to conceal his receipt of cash from Developer No. 1 and subsequent bribe payment to ANNABI by: (i) failing to file a Form 8300 with the IRS reporting that he had received in excess of $10,000 in cash and (ii) failing to report his receipt of his cash "fee" to the accountant who was preparing his law firm's U.S. Partnership Return, IRS Form 1065.

### Overt Acts

44.   In furtherance of the conspiracy and to effect the illegal objects thereof, SANDY ANNABI, ZEHY JEREIS and ANTHONY MANGONE, together with others known and unknown, committed the following overt acts, in the Southern District of New York and elsewhere:

a.   On numerous occasions during the calendar year 2004, ZEHY JEREIS gave SANDY ANNABI financial benefits and purported loans totaling at least $71,700.

b.   On numerous occasions during the calendar year 2005, ZEHY JEREIS gave SANDY ANNABI financial benefits totaling at least $30,741.

c.   On numerous occasions during the calendar year 2006, ZEHY JEREIS, ANTHONY MANGONE and others gave SANDY ANNABI financial benefits totaling at least $42,687.

d.   On numerous occasions during the calendar year
2007, ZEHY JEREIS gave SANDY ANNABI financial benefits totaling
at least $12,611.

e.   On numerous occasions during the calendar year
2008, ZEHY JEREIS gave SANDY ANNABI financial benefits totaling
at least $9,218.

f.   On or about April 15, 2006 and April 15, 2007,
SANDY ANNABI filed U.S. Federal Income Tax Returns, Form 1040,
that omitted the illegal payments she received from JEREIS,
MANGONE and others.

g.   On or about March 29, 2005, May 12, 2006, May 15,
2007 and May 14, 2008, SANDY ANNABI submitted financial
disclosure statements to the City of Yonkers that failed to
disclose her receipt of financial benefits from ZEHY JEREIS,
ANTHONY MANGONE, and others.

h.   In or about the summer of 2007, ANTHONY MANGONE
told an attorney representing Developer No. 1 and a third party,
in substance and in part, that MANGONE had taken cash from
Developer No. 1 and used the cash to pay a bribe to SANDY ANNABI.

i.   In or about the summer of 2007, after a
representative of Developer No. 1 had told an attorney
representing him in connection with a federal grand jury
investigation about the cash bribe ANTHONY MANGONE paid to SANDY

18

ANNABI, ANTHONY MANGONE instructed the representative that he should go to a new lawyer and that he should not tell the new lawyer about the cash bribe paid by the representative to MANGONE.

      j.   In or about late April or May 2006, ZEHY JEREIS told a representative of Developer No. 1, in substance and in part, that he could assist in getting SANDY ANNABI to support the Longfellow Project.

      k.   In or about June 2006, MANGONE called a representative of Developer No. 1 and told the representative, in substance and in part, that SANDY ANNABI would support the Longfellow Project if Developer No. 1 paid her $30,000 in cash.

      l.   In or about June 2006, ANTHONY MANGONE received $30,000 in cash from Developer No. 1 to give to SANDY ANNABI.

      m.   On or about July 10, 2006, ANTHONY MANGONE sent an e-mail to Developer No. 1.

      n.   On or about July 25, 2006, ANNABI sent an e-mail to her administrative assistant directing her not to put the Longfellow legislation on the list yet and to call "Z" [ZEHY JEREIS] and let him know that the Longfellow legislation had to be revised.

      o.   In or about September 2006, at a City Council meeting, ANNABI voted in favor of making Developer No. 1 the designated developer of the Longfellow Project.

p.   On or about June 9, 2006, SANDY ANNABI and ZEHY JEREIS met with representatives of Developer No. 2 at a restaurant.

q.   On or about June 9, 2006, ZEHY JEREIS asked one of Developer No. 2's representatives for a consulting job.

r.   On or about June 15, 2006, SANDY ANNABI issued a press release, announcing her support for the Ridge Hill Project.

s.   On or about June 16, 2006, ZEHY JEREIS sent an e-mail to a representative of Developer No. 2 attaching his resume and a cover letter.

t.   On or about June 20, 2006, and June 23, 2006, ZEHY JEREIS again sent e-mails to a representative of Developer No. 2 about his request for a job.

u.   On or about June 28, 2008, ZEHY JEREIS sent an e-mail to a representative of Developer No. 2, entitled "my info" that included his business name, address and social security number.

v.   On July 11, 2006, SANDY ANNABI voted to support a zoning change to permit the Ridge Hill Project to proceed.

w.   On or about July 24, 2006, JEREIS sent at least two e-mails to a representative of Developer No. 2 discussing the status of his contract, including one in which he wrote "I appreciate the movement on the contract."

x.   On or about March 12, 2007, ZEHY JEREIS sent an e-mail to a representative of Developer No. 2 attaching monthly reports dating back to August 2006 purporting to reflect work that he had done.

(Title 18, United States Code, Section 371.)

COUNT TWO

(Receiving Corrupt Payments – Longfellow Project)

The Grand Jury further charges:

45.   The allegations contained in paragraphs one through twenty-six and forty-three through forty-four of this Indictment are repeated and realleged as though fully set forth herein.

46.   From in or about the spring of 2006 through in or about March 2008, in the Southern District of New York and elsewhere, SANDY ANNABI, ZEHY JEREIS, and ANTHONY MANGONE, the defendants, during the time when SANDY ANNABI was an agent of a state government and local government and any agency thereof, unlawfully, willfully, knowingly and corruptly, solicited and demanded for the benefit of a person, and accepted and agreed to accept, something of value from a person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of such government and agency, involving something of value of $5,000 and more, said government and agency receiving, in a one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance and other form of Federal assistance, to wit, SANDY ANNABI, ZEHY JEREIS, and ANTHONY MANGONE solicited, agreed to accept and accepted money and payments directly and indirectly from Developer No. 1,

intending to be influenced and rewarded for actions that ANNABI took, and agreed to take in the future, in her capacity as a Councilwoman for the Second District of the City of Yonkers.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## COUNT THREE

**(Giving Corrupt Payments To A Public Official)**

The Grand Jury further charges:

47.   The allegations contained in paragraphs one through thirteen and twenty-seven through forty-four of this Indictment are repeated and realleged as though fully set forth herein.

48.   From in or about 2004, through in or about 2008, in the Southern District of New York and elsewhere, ZEHY JEREIS, the defendant, unlawfully, willfully, knowingly and corruptly, gave, offered, and agreed to give something of value to a person, with intent to influence and reward an agent of a state and local government and any agency thereof in connection with a business, transaction, and series of transactions of such government and agency involving something of value of $5,000 and more, said government and agency receiving, in a one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan guarantee, insurance and other form of Federal assistance, to wit, ZEHY JEREIS offered, agreed to give, and gave money directly and indirectly to SANDY ANNABI, during the time that she was a Councilwoman for the Second District of the City of Yonkers, with the intent to influence and reward SANDY ANNABI for official acts SANDY ANNABI took, and agreed to

take in the future, in her capacity as a Councilwoman for the Second District of the City of Yonkers.

(Title 18, United States Code, Sections 666(a)(2) and 2.)

## COUNT FOUR

### (Receiving Corrupt Payments)

The Grand Jury further charges:

49.   The allegations contained in paragraphs one through thirteen and twenty-seven through forty-four of this Indictment are repeated and realleged as though fully set forth herein.

50.   From in or about 2004 through in or about 2008, in the Southern District of New York and elsewhere, SANDY ANNABI, the defendant, during the time that she was an agent of a state and local government and any agency thereof, unlawfully, willfully, knowingly and corruptly, solicited and demanded for the benefit of a person, and accepted and agreed to accept, something of value from a person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of such government and agency, involving something of value of $5,000 and more, said government and agency receiving, in a one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance and other form of Federal assistance, to wit, SANDY ANNABI solicited, agreed to accept and accepted money and payments directly and indirectly from ZEHY JEREIS, intending to be influenced and rewarded for actions that she took, and agreed to take in the future, in her capacity as a Councilwoman for the Second District of the City of Yonkers.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

26

## COUNT FIVE

### (Extortion Of $30,000 From Developer No. 1)

The Grand Jury further charges:

51.   The allegations contained in paragraphs one through twenty-six and forty-three through forty-four of this Indictment are repeated and realleged as though fully set forth herein.

52.   From in or about May 2006 through in or about March 2008, in Westchester County, in the Southern District of New York and elsewhere, defendants SANDY ANNABI, ZEHY JEREIS, and ANTHONY MANGONE, unlawfully, willfully and knowingly obstructed, delayed and affected interstate commerce by extortion -- to wit, they obtained money from Developer No. 1 with Developer No. 1's consent, under color of official right.

(Title 18, United States Code, Sections 1951(a) and 2.)

## COUNT SIX

**(Travel And Use Of Interstate Facilities To Confer
Illegal Benefit On A Public Servant – Longfellow Project)**

The Grand Jury further charges:

53.   The allegations contained in paragraphs one
through twenty-six and forty-three through forty-four of this
Indictment are repeated and realleged as though fully set forth
herein.

54.   From in or about the spring of 2006 through in or
about March 2008, in the Southern District of New York and
elsewhere, SANDY ANNABI, ZEHY JEREIS, and ANTHONY MANGONE, the
defendants, unlawfully, willfully, and knowingly did travel and
use and cause the use of the mail and facilities in interstate
commerce, specifically, correspondence and interstate emails,
with the intent to promote, manage, establish, carry on and
facilitate the promotion, management, establishment and carrying
on of an unlawful activity, namely, bribery, in that SANDY ANNABI
solicited, accepted and agreed to accept benefits that were
conferred, and offered and agreed to be conferred by Developer
No. 1 upon an agreement and understanding that SANDY ANNABI's
vote, opinion, judgment, action, decision or exercise of
discretion as a Yonkers City Councilwoman would thereby be
influenced contrary to NY Penal Law Sections 200.00 and 200.10,
and thereafter acted to promote, manage, establish, carry on and
facilitate the promotion, management, establishment and carrying
on of the unlawful activity.

55.   In furtherance of the unlawful scheme, SANDY ANNABI, ZEHY JEREIS and ANTHONY MANGONE, the defendants, together with others known and unknown, committed the following overt acts, in the Southern District of New York and elsewhere:

a.   The overt acts set forth in paragraph forty-four, subparagraphs c, f, and g through o of this Indictment are repeated and realleged as if fully set forth herein.

(Title 18, United States Code, Sections 1952(a)(3) and 2.)

## COUNT SEVEN

### (Travel And Use Of Interstate Facilities To Confer Illegal Benefit On A Public Servant)

The Grand Jury further charges:

56. The allegations contained in paragraphs one through thirteen and twenty-seven through forty-four of this Indictment are repeated and realleged as though fully set forth herein.

57. From in or about 2004 through in or about 2008, in the Southern District of New York and elsewhere, SANDY ANNABI and ZEHY JEREIS, the defendants, unlawfully, willfully, and knowingly did travel and use and cause the use of the mail and facilities in interstate commerce, specifically, mailed correspondence and payments and interstate e-mails, with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, namely, bribery, in that SANDY ANNABI solicited, accepted and agreed to accept benefits that were conferred, and offered and agreed to be conferred by ZEHY JEREIS upon an agreement and understanding that SANDY ANNABI's vote, opinion, judgment, action, decision or exercise of discretion as a Yonkers City Councilwoman would thereby be influenced contrary to NY Penal Law Sections 200.00 and 200.10, and thereafter acted to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of the unlawful activity.

58.   In furtherance of the unlawful scheme SANDY ANNABI and ZEHY JEREIS, the defendants, together with others known and unknown, committed the following overt acts, in the Southern District of New York and elsewhere:

a.   The overt acts set forth in paragraph forty-four, subparagraphs a through g and p through x of this Indictment are repeated and realleged as if fully set forth herein.

(Title 18, United States Code, Section 1952(a)(3) and 2.)

## COUNT EIGHT

**(False Statement To A Financial Institution:      Patton Drive)**

The Grand Jury further charges:

59.  The allegations contained in paragraphs one
through forty-four of this Indictment are repeated and realleged
as though fully set forth herein.

60.  From in or about May 2004 through July 2004, in
the Southern District of New York and elsewhere, SANDY ANNABI,
the defendant, unlawfully, willfully and knowingly did make a
false statement and report for the purpose of influencing the
action of Fremont Investment & Loan, an institution the accounts
of which are and were then insured by the Federal Deposit
Insurance Corporation ("FDIC"), upon an application, advance,
discount purchase, purchase agreement, repurchase agreement,
commitment, loan, and any change and extension of the same, by
renewal, deferment of action and otherwise, and the acceptance,
release and substitution thereof, to wit, in connection with an
application for a mortgage to purchase property located at
Patton Drive in Yonkers (the "Patton Drive House"), ANNABI
falsely stated that (a) she would reside in the Patton Drive
House; (b) that no part of the down payment was borrowed; and (c)
that she had been paying monthly rent in her current residence of
$800 per month.

(Title 18, United States Code, Sections 1014 and 2.)

## COUNT NINE

### (False Statement To A Financial Institution: Bacon Place)

The Grand Jury further charges:

61.   The allegations contained in paragraphs one through forty-four of this Indictment are repeated and realleged as though fully set forth herein.

62.   At all times relevant to this Indictment, Columbia Equities, Ltd, ("Columbia Equities") was a wholly owned subsidiary of OceanFirst Bank, a lender whose deposits were insured by the Federal Deposit Insurance Corporation ("FDIC"). Columbia Equities was in the business of arranging mortgages for FDIC lenders.

63.   National City Bank ("National City") was also a lender whose deposits were FDIC insured.

64.   From in or about May 2004 through in or about July 2004, SANDY ANNABI, approached the same mortgage broker who was in the process of arranging the Patton Drive House mortgage and advised him that she wanted to purchase a second house.  The mortgage broker told ANNABI, in substance and in part, that her application for a mortgage on the second house would have to be processed as an investment property given that she had already applied for a mortgage on the Patton Drive House and that the interest rates for investment properties were less favorable than those available for owner-occupied residences.  ANNABI thereafter

advised the broker arranging the Patton Drive House loan that she was not interested in applying for a mortgage on a second house.

65.   Shortly thereafter, and unbeknownst to the mortgage broker arranging the Patton Drive House loan, SANDY ANNABI approached Columbia Equities and National City Bank and applied for a mortgage and a home equity loan to purchase a house located at     Bacon Place, Yonkers, New York ("the Bacon Place House").  During and in the course of applying for the loans, ANNABI made the following false statements, among others:

a.   ANNABI failed to list as a liability on her loan application the mortgage on the Patton Drive House even though the closing on the Patton Drive House took place just three days before the closing on the Bacon Place House;

b.   ANNABI falsely inflated her income and bank account balance;

c.   To support her falsely inflated income and bank account balance, ANNABI's application included fake pay stubs, W-2's, and bank statements;

d.   ANNABI falsely claimed that at the time of her loan application, she had been paying rent at her previous residence of $950 per month.

## Statutory Allegation

66.   From in or about May 2004 through in or about July 2004, in the Southern District of New York and elsewhere, SANDY ANNABI, the defendant, unlawfully, willfully and knowingly did make false statements and reports for the purpose of influencing the action of OceanFirst Bank, of which Columbia Equities was a wholly owned subsidiary, and National City Bank, institutions the accounts of which are and were then insured by the FDIC, upon an application, advance, discount purchase, purchase agreement, repurchase agreement, commitment, loan, and any change and extension of the same, by renewal, deferment of action and otherwise, of acceptance, release and substitution of the security therefore, to wit, in connection with an application for a mortgage and home equity loan on the Bacon Place House, ANNABI made false statements as described in paragraph 65 above.

(Title 18, United States Code, Sections 1014 and 2.)

<u>COUNT TEN</u>

**(False Statement To A Financial Institution:**
**Rumsey Road)**

The Grand Jury further charges:

67.   The allegations contained in paragraphs one through forty-four of this Indictment are repeated and realleged as though fully set forth herein.

68.   From in or about November 2004 through in or about February 2005, SANDY ANNABI, caused to be submitted to Columbia Equities, an application and financial information, in connection with her seeking a mortgage to purchase a cooperative apartment located at    Rumsey Road, Yonkers, New York ("the Rumsey Road Apartment"), which was located in ANNABI's City Council District – unlike the Patton Drive House and the Bacon Place House. During and in the course of applying for the loan and at the loan closing that occurred on or about February 14, 2005, ANNABI made the following false statements, among others:

    a.   ANNABI falsely inflated her income;

    b.   To support her falsely inflated income and bank account balance, ANNABI's application included fake pay stubs, W-2's, and bank statements;

    c.   ANNABI falsely claimed that she had received rental income from the Patton Drive House of approximately $776 per month when she had not

received any rental income from the Patton
Drive House;

        d.    ANNABI falsely claimed that her residence was
Linden Street in Yonkers.

### Statutory Allegation

     69.   From in or about November 2004 through in or about
February 2005, in the Southern District of New York and
elsewhere, SANDY ANNABI, the defendant, unlawfully, willfully and
knowingly did make false statements and reports for the purpose
of influencing the action of OceanFirst Bank, of which Columbia
Equities was a wholly owned subsidiary, an institution the
accounts of which are and were then insured by the FDIC, upon an
application, advance, discount purchase, purchase agreement,
repurchase agreement, commitment, loan, and any change and
extension of the same, by renewal, deferment of action and
otherwise, and the acceptance, release and substitution of
security therefore, to wit, in connection with an application for
a mortgage on the Rumsey Road Apartment, ANNABI made false
statements as described in paragraph 68 above.

    (Title 18, United States Code, Sections 1014 and 2.)

<u>COUNTS ELEVEN AND TWELVE</u>

(Subscribing To False and Fraudulent U.S.
Individual Income Tax Returns)

The Grand Jury further charges:

70.   The allegations in paragraphs one through forty-four of this Indictment are repeated and realleged as though fully set forth herein.

71.   As set forth in more detail above, during the 2005 and 2006 tax years, SANDY ANNABI, the defendant, received in excess of $73,000 in the form of payments from ZEHY JEREIS, ANTHONY MANGONE and Developer No. 1.  Despite the fact that those payments constituted income, ANNABI failed to report that income on the U.S. Individual Income Tax Returns, Form 1040, that ANNABI caused to be prepared, subscribed, and filed with the IRS for the 2005 and 2006 tax years.

72.   In addition to the foregoing, SANDY ANNABI falsely claimed on her 2005 U.S. Individual Income Tax Return, Form 1040, a casualty loss attributable to a $50,000 loan she claimed to have made to her father on or about February 11, 2003, which ANNABI claimed had been defaulted on by her father.  In fact, ANNABI had made no such loan to her father.

<u>Statutory Allegation</u>

73.   On or about the dates set forth below, in the Southern District of New York and elsewhere, SANDY ANNABI, the defendant, unlawfully, willfully and knowingly did make and subscribe to U.S. Individual Income Tax Returns, Forms 1040, for

the tax years set forth below, which returns contained and were verified by the written declaration of ANNABI that they were made under penalties of perjury, and which returns ANNABI did not believe to be true and correct as to every material matter, as set forth below:

| COUNT | TAX YEAR | RETURN FILING DATE | FALSE ITEM(S) |
|---|---|---|---|
| 11 | 2005 | 4/15/06 | Failed to report income in the amount of at least $30,741 from JEREIS; falsely claimed a casualty loss based on a 2003 loan to her father. |
| 12 | 2006 | 4/15/07 | Failed to report income in the amount of at least $42,687 from JEREIS, MANGONE, and Developer No. 1. |

(Title 26, United States Code, Section 7206(1).)

## COUNT THIRTEEN

### (Currency Reporting Violation)

The Grand Jury further charges:

74.   The allegations contained in paragraphs one through forty-four of this Indictment are hereby repeated and realleged as though fully set forth herein.

75.   At times relevant to this Indictment, including throughout 2006, ANTHONY MANGONE, the defendant, was engaged in a trade or business, that is, the practice of law in Hawthorne, New York.

76.   In or about April 2006, Developer No. 1 retained ANTHONY MANGONE to represent it in connection with its efforts to obtain the support of the Yonkers City Council for the Longfellow Project.

77.   In or about June 2006, ANTHONY MANGONE received approximately $40,000 in cash in connection with a single transaction, that is, MANGONE's efforts to obtain the approval of the Longfellow Project from the Yonkers City Council.  This $40,000 figure included the $30,000 bribe MANGONE had demanded on ANNABI's behalf for her vote on the Longfellow Project, as well as the $10,000 in legal fees that MANGONE charged Developer No. 1 in connection with the transaction.

### Statutory Allegation

78.   In or about June 2006, in the Southern District of New York, ANTHONY MANGONE, the defendant, who was engaged in a trade and business, and who in the course of such trade and

business received more than $10,000 in cash in one transaction, namely, the $40,000 in cash described in paragraphs 19, 20 and 77, knowingly and willfully and for the purpose of evading the reporting requirements of Sections 5331 of Title 31, United States Code, and the regulations promulgated thereunder, failed to file a Form 8300, which form MANGONE was required to file pursuant to Section 5331 of Title 31 and 31 C.F.R. § 103.30.

(Title 31, United States Code, Sections 5322 and 5331, and Title 31, Code of Federal Regulations, Section 103.30.)

## Forfeiture Allegation

79.   As the result of committing the conspiracy and bribery offenses in violation of Title 18, United States Code, Sections 371, 666, 1951, and 1952 alleged in Counts One through Seven of this Indictment, SANDY ANNABI, the defendant, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense, including but not limited to at least $69,580.32 in U.S. Currency and all that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at   Bacon Place, Yonkers, New York and    Rumsey Road, Yonkers, New York.

## Substitute Asset Provision

80.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third person; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be subdivided without difficulty, it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property, including but not limited to the following: all that lot or parcel of land, together with its buildings, appurtenances,

42

improvements, fixtures, attachments and easements, located at Bacon Place, Yonkers, New York and     Rumsey Road, Yonkers, New York.

            (Title 18, United States Code, Section 981 and
             Title 28, United States Code, Section 2461.)


_____          _____
GRAND JURY FOREPERSON                     PREET BHARARA
                                          United States Attorney

43