UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                              :
UNITED STATES OF AMERICA                      :    10 CR. 007 (CM)
                                              :    ECF CASE
           -v.-                               :
                                              :    MEMORANDUM OF LAW
SANDY ANNABI, ZEHY JEREIS, and                :
ANTHONY MANGONE,                              :
                                              :
                    Defendants.               :
                                              :
--------------------------------------------------------X


### DEFENDANT ANTHONY MANGONE'S MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR A PROTECTIVE ORDER


James R. DeVita (JD 5659)
SCHOEMAN, UPDIKE & KAUFMAN, LLP
Attorneys for Defendant Anthony Mangone
60 East 42nd Street
New York, New York 10165
(212) 661-5030

Dated: New York, New York
       March 5, 2010

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................... ii

INTRODUCTION ..................................................................................................... 1

BACKGROUND ....................................................................................................... 3

ARGUMENT ............................................................................................................. 5

    1.    The Government's Proposed Order Is Invalid ........................................... 6

    2.    The Government has Failed to Show "Good Cause" ................................ 7

    2.    Defendant Mangone Is Entitled to the Grand Jury
           Testimony and an Evidentiary Hearing .................................................... 9

CONCLUSION ........................................................................................................ 12

# TABLE OF AUTHORITIES

Page

**Cases**

*Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108 (3d Cir. 1986) ............................... 8

*Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211 (1979) ......... 10

*Drywall Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n*,
889 F.2d 389 (2d Cir. 1989) ................................................................................... 7

*Hess v. New Jersey Rail Operations, Inc.* 846 F.2d 114 (2d Cir. 1988) .................... 7

*King v. Allied Vision, Ltd.*, 65 F.3d 1051 (2d Cir. 1995) ........................................... 7

*New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339 (2d Cir. 1989) ......... 7

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3rd Cir. 1994) ............................... 8

*United States v. Kilpatrick*, 575 F. Supp. 325 (D. Colorado 1983) ........................ 10

*United States v. Luchko*, 2007 WL 1651139 (E.D. Pa. June 6, 2007) ..................... 7

*United States v. Wecht*, 484 F.3d 194 (3d Cir. 2007) ............................................. 8

**Statutes and Rules**

18 U.S.C. § 3500 ............................................................................................. 3, 11

Fed.R.Crim.P. 6(e) ................................................................................. 2, 6, 10, 13
Fed.R.Crim.P. 6(e)(2)(E) ........................................................................................ 12
Fed.R.Crim.P. 6(e)(3)(E)(i) ..................................................................................... 10
Fed.R.Crim.P. 16 ..................................................................................................... 3
Fed.R.Crim.P. 16(d)(1) ............................................................................................ 4
Fed.R.Civ.P. 26(c) ................................................................................................... 8

Local Criminal Rules for Southern District of New York
Local Rule 23.1 .................................................................................... 2, 6, 10, 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA

    -v.-

SANDY ANNABI, ZEHY JEREIS, and
ANTHONY MANGONE,

                    Defendants.

------------------------------------------------------------X

10 CR. 007 (CM)
**ECF CASE**

MEMORANDUM OF LAW

Defendant Anthony Mangone submits this memorandum of law in opposition to the government's motion for a protective order.

## Introduction

Ironically, the government's motion – ostensibly intended to protect the privacy not only of the "victims" of the purported scheme charged in the indictment (e.g., the unindicted co-conspirators in the two bribery conspiracies alleged in Count One), but also of the *defendants themselves* (Government Motion for a Protective Order ("Gov. Motion") at 14) – has had precisely the opposite effect for Anthony Mangone. In fact, whether so intended or not, it has had the impact of the very type of conduct the government claims it is seeking to prevent: "a calculated effort to pollute the jury pool." Gov. Motion at 10-11 (footnote omitted).

The government included in its publically filed brief gratuitous, irrelevant and unsupported assertions of "obstructive conduct" on the part of Anthony Mangone. The government did so aware of the inevitable result: "Recognizing that 'documents filed electronically on the ECF system are more widely available than

ever before,' parties should be cautious where filing sensitive information." Gov. Motion at 13 (citations omitted). Parties other than the government, apparently.

Needless to say, the inevitable occurred. Two days after the government filed its motion, the Journal News carried an article with the following headline: "Feds: Mangone Tried to Get Witnesses to Lie in Yonkers Probe." Affirmation of James R. DeVita, dated March 5, 2010 ("DeVita Aff.") Ex. G. Moreover, it is clear from the content of the article that some representative of the government disclosed to the author alleged information not contained in the publicly filed motion. Thus, the article claims that Mr. Mangone had separate meetings with two witnesses "in which Mangone said he intended to tell federal agents that the $10,000 payment [to co-defendant Zehy Jereis] was Jereis' fee to lobby the Yonkers City Council on the Longfellow Project, federal prosecutors said in the filing." Yet, nowhere in the government's motion is the amount of the alleged payment to Jereis mentioned. That information could have reached the reporter only from a government representative, in violation of Rule 6(e) of the Federal Rules of Criminal Procedure and Rule 23.1 of this Court's Local Criminal Rules. So much for the "self-imposed restrictions on the disclosure of law enforcement information and sensitive personal information" touted by the government in its motion. Gov. Motion at 14.

The rules of this Court should be enforced equally on all parties. (Characteristically, the government's proposed protective order applies only to the defense, not to the government or its witnesses). The Government precipitated this needless litigation over the terms of a proposed protective order – despite the

defendants' express willingness to consent to an order with reasonable terms – the result of which has been to "pollute the jury pool" further with unfair government generated pretrial publicity. Defendant Mangone respectfully requests that the Court: (a) order an evidentiary hearing to determine the source of the information apparently disclosed in violation of Rules 6(e) and Local Rule 23.1; and (b) direct the government to provide Mr. Mangone with copies of the grand jury testimony of "John Doe No. 1" and "John Doe No. 2" referred to in its motion so that he can properly frame his response to the government's motion, as well as prepare for the evidentiary hearing.

## Background

On January 21, 2010, the government proposed to all three defense counsel that the parties agree to a form of protective order to cover all discovery materials produced by the government in connection with this case, including all materials produced pursuant to Rule 16, F.R. Crim. P., 18 U.S.C. § 3500, *Brady v. Maryland* and *United States v. Giglio*. DeVita Aff. ¶ 2, Ex. A. Although willing to consider agreeing to a consent protective order, all three defense counsel raised concerns regarding the unwarranted and unjustified scope of the proposed order, as well as other specific provisions, and the government circulated a second draft on February 3, 2010. DeVita Aff. ¶ 3, Ex. B.

Defense counsel again expressed objections to the still unduly broad coverage of the government's proposed order, as well as the vagueness of the categories of materials the government proposed to exempt from the protective order. The

3

defense proposed that the government identify specifically, by bates number, the documents it wanted covered by the protective order, and provide in the order a mechanism for court review of the confidentiality designation of any specific documents the confidentiality of which the defendants might contest, leaving with the government the burden of showing "good cause" under Rule 16 (d)(1) for the confidentiality of any disputed document. DeVita Aff. ¶ 4, Ex. C.[1]

The government refused to provide specific identification of the documents it considered confidential, opting instead to "designate certain categories of documents and file a motion for a protective order on behalf of certain third parties." DeVita Aff. Ex. D. Despite informing the Court at the last pretrial conference that it intended to number the documents produced in discovery, the government apparently contends that identifying the confidential documents by those numbers is simply "too much work."

Furthermore, the government deemed the prospect that the defendants would be able to seek Court review of the government's confidentiality determinations as "unacceptable:" "Your proposal that the [g]overnment turn over documents and then give you an opportunity to dispute whether [documents

---

[1] The defense also requested certain language changes in the proposed order, as well as the option to destroy copies of documents on which they may have made annotations, highlighted or otherwise reflected attorney work product, thoughts and analysis, rather than returning them to the government at the conclusion of the case. DeVita Aff. ¶ 4, Ex. C. Although the government agreed to those changes, DeVita Aff. Ex. D, only one of the three is reflected in the order proposed to the Court on this motion. Thus, ¶ 2 A of the proposed order still prohibits the defense from providing copies of documents to "transactional witnesses" without any definition of that term, and it does not provide for the destruction of copies of documents provided in discovery instead of their return to the government. If the Court were to determine some form of protective order is appropriate, we would respectfully request that it be tailored to address the concerns expressed in our correspondence with the government, particularly on those points where the government accepted the defense position. We also request that the government and its witness be subject the same restrictions that the defense is.

4

produced in discovery] should be covered by the protective order is unacceptable." DeVita Aff. Ex. D. Apparently, the government feels entitled to unreviewable discretion in determining what documents are to be subject to the protective order. In view of the government's intransigence, it became necessary to seek the Court's intervention. DeVita Exs. E, F. The government's position is unreasonable and conflicts with the very authorities it cites on this motion.

## Argument

The government's proposed order on this motion, like those it proposed to defense counsel, is so vague and indefinite as to be unenforceable. Moreover, the government has not come close to showing the "good cause" required by Rule 16(d)(1) for the issuance of a protective order over the defendants' objection. The unsupported allegations of "obstructive conduct" on the part of Mr. Mangone, even if true (which we vigorously dispute), would not justify the type of protective order the government seeks and, thus, are utterly irrelevant to this motion. Even assuming they were relevant, since the government has chosen to make the conclusory allegations without evidentiary support, defendant Mangone is under an unfair handicap in attempting to dispute the government's bald assertions. Without access to the grand jury testimony on which those assertions are purportedly based, the defense is unable to demonstrate how much of the government's assertion is actually interpretive spin. It is quite clear that such spin is an essential ingredient of the government's recitation from its use of the tell tale label "in substance and in part" to describe either what Mr. Mangone allegedly said, the witnesses' testimony,

5

or both. Gov. Motion at 4. Fairness and due process require that Mr. Mangone be given an opportunity to set the record straight before the Court even considers the government's assertions in deciding whether to grant the protective order requested. Finally, the Court should conduct an evidentiary hearing to determine who in the government is responsible for the apparent violation of Rule 6(e), Fed. R. Crim. P. and Local Criminal Rule 23.1.

1. **The Government's Proposed Order Is Invalid.**

The government's current proposed protective order would cover "any document and other information provided by the Government to the defense in this action" "[w]ith the exception of otherwise publically available documents and information." Gov. Motion Ex. A. The government, apparently without intended irony, terms this proposed order "narrowly tailored so that it does not inhibit the defendants' ability to prepare for trial." Gov. Motion at 1. It completely ignores the obvious problem of how the defendants, at the risk of being held in contempt for violating of the order, are supposed to determine which of the "more than 100,000 pages of material" the government anticipates producing in discovery (Gov. Motion at 17-18) were "otherwise publically available." Due process of law requires far more precise notice of what specifically is prohibited by a court order.[2]

---

[2] The government's last proposed protective order prior to this motion was, if anything, even more vague and indefinite as to what it covered: "With the exception of documents that were obtained from the City of Yonkers, the County of Westchester and the State of New York that do not contain sensitive personal identifying information, or are otherwise available to the general public without legal process," everything produced by the government would have been covered by that proposed order. DeVita Aff. Ex. B.

6

The standard a court order must meet in order to support a finding of contempt is well established. To prove contempt,

> a movant must establish that (1) *the order the contemnor failed to comply with is clear and unambiguous*; (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner. *See New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). A clear and unambiguous order is one that leaves 'no uncertainty in the minds of those to whom it is addressed,' *Hess v. New Jersey Rail Operations, Inc.* 846 F.2d 114, 116 (2d Cir. 1988), who 'must be able to ascertain from the four corners of the order precisely what acts are forbidden,' *see Drywall Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n*, 889 F.2d 389, 395 (2d Cir. 1989), *cert. denied*, 494 U.S. 1030, 110 S.Ct. 1478, 108 L.Ed.2d 615 (1990).

*King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (emphasis added).

The government's proposed order clearly does not meet the "clear and unambiguous" standard. The defendants would be forced to guess which documents produced by the government are covered by the protective order and which documents are not. Since the government has already announced that it intends to number the documents produced, any protective order which the Court even considers should require the government to specify, by production number, which documents it contends should be subject to the protective order.

### 2. The Government has Failed to Show "Good Cause."

The government has failed to make the required showing of "good cause" for issuance of a protective order over the objection of the defendants. Even the legal authority on which the government relies makes this clear. For example, the government quotes from selected segments of *United States v. Luchko*, 2007 WL 1651139 (E.D. Pa. June 6, 2007), but chooses to ignore the following reasoning in

7

*Luchko*, quoted from *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007):

> "Courts may issue protective orders "for good cause" under Rule 16 of the Federal Rules of Criminal Procedure. *See also Pansy[v. Borough of Stroudsburg]*, 23 F.3d [772 (3rd Cir. 1994] at 786 (noting in the civil context that 'it is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of protection') (quoting Fed.R.Civ.P. 26(c)). 'Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing.' *Id.* (citation and internal quotation marks omitted)."

*Lutchko*, 2007 WL 1651139 at *6. Here, all the government has provided are "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning." Thus, its motion should be denied.

The government also cites *Lutchko* in support of its request for an "umbrella" protective order, but omits the court's explanation of how an "umbrella" order should operate. Quoting from *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1122 (3d Cir. 1986), the court in *Luchko* described the "umbrella" order process as follows:

> ". . . It is equally consistent with the proper allocation of evidentiary burdens for the court to construct a broad "umbrella" protective order upon a threshold claim by one party (the movant) of good cause. Under this approach, the umbrella order would initially protect all documents that the producing party designated in good faith as confidential. After delivered under this umbrella order, the opposing party could indicate precisely which documents it believed not to be confidential, and the movant would have the burden of proof in justifying the protective order with respect to those documents. The burden of proof would be at all times on the movant; only the burden of raising the issue with respect to certain documents would shift to the other party."

*Luchko, supra*, at * 10. This is precisely the procedure the defendants proposed, but

8

the government rejected as "unacceptable." If there is to be any protective order at all in this case, it should maintain, as the *Lutchko* court indicated, the proper burden of proof on the government that "good cause" exists, and permit Court review of the government's determinations of what should, and what should not be, subject to the protective order.

Finally, the government's assertions that Mr. Mangone engaged in "obstructive" conduct are utterly irrelevant to this motion. Even assuming they were true, which the defense vigorously disputes, that would not justify the type of order the government seeks on this motion. As the government itself admits, its unsubstantiated assertions were the basis of special conditions attached to Mr. Mangone's release on bail. Gov. Motion at 16.[3] The government provides no explanation why those bail conditions are inadequate to prevent future "obstructive" conduct on the part of Mr. Mangone, and why the additional imposition of an overly broad protective order on all the defendants is in any way justified by its unsupported accusations.

### 3. Defendant Mangone Is Entitled to the Grand Jury Testimony and an Evidentiary Hearing.

The government has now, for the second time, sought to obtain relief affecting Mr. Mangone on the basis of evidence to which it alone has access, without sharing that evidence with either Mr. Mangone or the Court. It also appears, from

---

[3] To the extent the government implies that Mr. Mangone's failure to contest the imposition of these conditions at the time of his arraignment suggests his acquiescence in the need for them, or the accuracy of the factual assertion upon which they were sought, it is mistaken. Mr. Mangone was not then in a position to dispute the assertions because he has not been granted access to the evidence on which the government purports to base them. Unfortunately, that is still the case and the government continues to attempt to take unfair advantage of its unilateral access to the grand jury testimony that allegedly substantiates these assertions.

9

the press report surrounding the government's motion, that someone associated with the government has provided information to the press that is not part of the public record. *See* pages 2-3, *supra.* The unfairness of that unilateral access to the evidence purportedly relevant to this contested motion is patent.

Rule 6(e)(3)(E)(i) authorizes the Court to disclose grand jury matter "preliminarily to or in connection with a judicial proceeding." Both this motion, and the hearing defendant Mangone requests to determine the source of the grand jury leak in violation of Rule 6(e) and Local Criminal Rule 23.1, are judicial proceedings that justify the release to Mr. Mangone, under an appropriate protective order, of the grand jury testimony of "John Doe No. 1" and "John Doe No. 2" referred to in the government's motion. *See United States v. Kilpatrick*, 575 F. Supp. 325 (D. Colorado 1983), *appeal dismissed and mandamus denied*, 822 F.2d 969 (10th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988).

The Supreme Court set the standard for the release of grand jury transcripts in *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211 (1979):

> Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.

*Id.* at 222 (footnote omitted). The Court "emphasize[d] that a court called upon to determine whether grand jury transcripts should be released necessarily is infused with substantial discretion." *Id.* at 223 (citation omitted).

Here, the *Douglas Oil* standard is clearly met. The government is seeking to take unfair advantage of its unilateral access to grand jury material in the context

of this motion for a protective order. It has signaled, by using the phrase "in substance and in part" to describe the statements attributed to Mr. Mangone (Gov. Motion at 4), that: 1) it is paraphrasing, and 2) it is selecting only part of what was said. One must assume that the government has selected only those portions of the testimony that support its position, and has characterized what was said in terms most favorable to its position. If the "secret" testimony is proper for consideration by the Court, fairness requires that Mr. Mangone be allowed access to it in order to contest the government's characterizations and to identify portions favorable to his position.

With respect to the second prong of the *Douglas Oil* test -- the "need for continued secrecy" -- the grand jury testimony is no longer secret since the government itself has already revealed it, at least "in substance and in part." What the government really seeks to preserve is its unfettered ability to select what parts are revealed in aid of its litigation positions, and it wants to avoid any possible challenge by the defense to its characterization of the evidence. In other words, it wants to preserve its unfair advantage. "[A]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden of showing justification." *Id.* at 223 (citation omitted).

In any event, since the government will be required to provide this grand jury testimony to the defense at the time of trial pursuant to 18 U.S.C. § 3500 anyway, the issue is one of timing only. The government has no legitimate interest in delaying the disclosure while at the same time seeking to use the "secret" evidence

11

in support of its litigation positions prior to trial. Such selective disclosure by the government is inherently unfair and the Court should use its discretion to level the playing field. In many respects, this case resembles *United States v. Kilpatrick, supra*, where the district court granted the defendant access to the entire grand jury record in order to prepare for hearings to determine whether the government had committed misconduct in the grand jury. 575 F. Supp. at 339.

Finally, our request is structured to cover only our need to respond to the government's assertions. The testimony of these two witnesses, whose identity is obviously known to Mr. Mangone and therefore will not be "revealed" to him if we receive the transcripts, is all that we are requesting at this time in order to frame our response to this motion properly, and to prepare for the hearing we request. The Court can certainly impose restrictions, by way of a protective order, on the release or publication of the substance of the testimony under the provisions of Rule 6(e)(2)(E).

## Conclusion

For the reasons set forth in defendant this memorandum of law and the accompanying affirmation of James R. DeVita, and the submissions in opposition to this motion by the co-defendants, this Court should: (a) order the government to turn over the transcripts of the grand jury testimony of "John Doe No. 1" and "John Doe No. 2"; (b) order a hearing to determine what government representative has

revealed information in violation of Rule 6(e), F.R. Crim. P., and Local Criminal Rule 23.1; or, in the alternative, (c) deny the government's motion.

Dated: New York, New York
       March 5, 2010

                                         Respectfully submitted,

                                         */s/ James R. DeVita*

                                         James R. DeVita (JD5659)
                                         SCHOEMAN, UPKIKE & KAUFMAN, LLP
                                         Attorney for Defendant Anthony Mangone
                                         60 East 42nd Street
                                         New York, New York 10165-0006
                                         (212) 661-5030