EXHIBIT C

Loan Number: 297152838

# LOAN SECURITY AGREEMENT

THIS AGREEMENT made the 14th day of FEBRUARY, 2005 , between
COLUMBIA HOME LOANS, LLC, A CORPORATION ORGANIZED AND EXISTING UNDER
THE LAWS OF THE STATE OF NEW YORK
having its principal place of business at 400 COLUMBUS AVENUE, VALHALLA, NEW YORK 10595

(the "Lender"), and SANDY ANNABI

residing at ~~45 BACON PLACE, YONKERS, NEW YORK 10710~~
(SA) 53 Linden St Yonkers, ny 10701 (the "Borrower").

1.  NOTE
    As evidenced by a note (the "Note") dated the date of this Loan Security Agreement, Borrower is obligated to pay to the Lender the principal amount of FIFTY-SEVEN THOUSAND SIX HUNDRED AND 00/100
    ($ 57,600.00 ) Dollars, with interest as provided in the Note (which principal amount with interest, any charges due the Lender pursuant to the terms of the Note or this Loan Security Agreement, and any sums advanced by the Lender pursuant to the terms of this Loan Security Agreement shall be collectively referred to as the "Debt").

2.  STOCK AND PROPRIETARY LEASE
    The Borrower is the sole owner of 190
    shares of capital stock (the "Stock") of PARKVIEW OWNERS, INC.

    (the "Corporation") and is the tenant under a proprietary lease (the "Lease") for apartment 1B
    (the "Apartment") in the building known as 245 RUMSEY ROAD, APT # 1B, YONKERS, NEW YORK 10701 (the "Building").

3.  SECURITY
    As security for the payment of the Debt, Borrower hereby gives to the Lender a security interest in the Stock of the Corporation and the Lease together with all increases, profits, proceeds, additions and substitutions for the Stock and the Lease (collectively referred to as "Security").

4.  REPRESENTATIONS, WARRANTIES AND COVENANTS OF THE BORROWER
    a.  Borrower is the lawful owner of the Security, free and clear of all liens, claims and other security interests, except for the lien of the Corporation as set forth in the Lease, and has full right, power and authority to give a security interest to the Lender.
    b.  The Borrower will not sell, transfer, pledge or assign the Security, or attempt to do so without the Lender's prior written consent.
    c.  The Borrower gives the Lender permission to file a financing statement and to continue or amend the financing statement without the Borrower's signature on it.
    d.  The Borrower has delivered to the Lender the Stock and the Lease and the Borrower will not attempt to replace them or modify his interest as represented by the Stock and the Lease.
    e.  Borrower agrees to make all payments of principal, interest and any other charges pursuant to the terms of the Note or this Loan Security Agreement.
    f.  Borrower agrees to make all maintenance payments and other charges pursuant to the terms of the Lease.
    g.  Borrower agrees to defend its ownership interest in and Lender's rights to the Security as specified in this Loan Security Agreement from and against all other claims.
    h.  Borrower agrees to maintain the Apartment in a good state of repair, free from waste, and will obey all federal, state and municipal requirements affecting the Apartment, and will allow an employee, representative or agent of Lender to make reasonable entries to inspect the Apartment.

5.  EVENTS OF DEFAULTS
    If any of the following events ("Events of Default") occurs, the Lender at its sole and exclusive option, without notifying the Borrower of such default, without presenting the Note, without notice of protest and without demanding payment of the Note, which are hereby all expressly waived, will have the right to demand the entire unpaid Debt to become immediately due and payable, and the Lender will have the right to sell the Security, and to use any other legal means to enforce its interest:
    a.  The non-payment of any amount when due under the terms of the Note or this Loan Security Agreement or any other instrument evidencing or securing the obligation due under the Note;
    b.  The non-payment of any maintenance or other charges pursuant to the terms of the Lease;
    c.  The Corporation cancels or terminates the Stock and the Lease;
    d.  The expiration of the Lease without the Lease being renewed or extended by resolution of the Corporation, or replaced with a new Lease containing an extended expiration date;
    e.  The commencement of any legal proceeding against the Borrower that may affect the security interest hereunder or if the Lender deems itself insecure;
    f.  The surrender, transfer, pledging as collateral, or assignment of the Borrower's interest in the Security;
    g.  The attachment of any lien to the Borrower's interest in the Security;

LOAN SECURITY AGREEMENT
01/26/05                                   Page 1 of 4                    DocMagic eForms 800-649-1362
                                                                           www.docmagic.com

Nyha.msc.1.tem

h. Any representation in any financial or other statement of the Borrower, delivered to the Lender by or on behalf of the Borrower, is inaccurate, untrue, misleading, or omits any material fact, or if a material adverse change shall occur in the financial conditions of the Borrower;

i. Any obligation of the Borrower or of the Corporation is declared due and payable prior to maturity;

j. The shareholders or directors of the Corporation authorize its dissolution;

k. The Corporation shall issue to any other person or entity the Stock and the Lease purporting to grant such person or entity rights in the Apartment;

l. The Borrower fails to deliver immediate possession of any replacements, modifications, additions, proceeds, or substitutions of the Stock or the Lease;

m. Failure of the Borrower to comply, observe or perform any term, provision or agreement under the Note, this Loan Security Agreement, the Lease, the Corporation's by-laws, or any other related agreement;

n. The Borrower sublets the Apartment or assigns the Lease without the prior written consent of the Lender and the Corporation;

o. Borrower makes substantial modifications to the Apartment without the Lender's prior written consent;

p. The Borrower fails to execute and deliver any instrument required by the Lender to perfect or protect its security interest in the Security or to pay any filing or recording fees owing in connection with the perfection of the security interest;

q. The Borrower, the Corporation, and any endorser, guarantor or surety of either the Borrower or the Corporation (for the purposes of this paragraph only, the Borrower, the Corporation and any endorser, guarantor or surety of either the Borrower or the Corporation shall be referred to as the "Debtor") shall become insolvent, however such insolvency may be evidenced, commit any act of bankruptcy, or make a general assignment for the benefit of creditors, or any person or entity shall attempt to enforce a judgement against the Debtor, the Debtor's property, or an insolvency proceeding under any bankruptcy or insolvency law is instituted against the Debtor; or any governmental authority or any court at the insistence of any governmental authority shall take possession of or assume control over any substantial part of the property of the Debtor, or a receiver shall be appointed to take control of or assume control over any substantial part of the property of the Debtor, or a writ or order of attachment or garnishment shall be issued or made against any of the property of the Debtor;

r. The non-payment by the Corporation of any mortgage payments, real estate taxes or assessments it is obligated to pay;

s. The Corporation fails to insure the Building;

t. The Building or the Apartment is materially destroyed, demolished or damaged by fire or the elements, taken by eminent domain, or declared unfit for habitation;

u. The Borrower fails to furnish within ten (10) days of the Lender's request, a signed statement acknowledging the amount due under this Loan Security Agreement and stating whether any set-offs or defenses exist against this Agreement;

v. The Apartment is used for any purpose that increases the risk of fire or other hazard;

w. The Apartment is used for any unlawful purpose;

x. The Borrower is in default on any other loan Borrower has with the Lender or any one of its affiliates.

6. REMEDIES OF THE LENDER

If an Event of Default has occurred, the Lender may, in addition to any rights and remedies of a secured party under the Uniform Commercial Code as in effect at the time in New York, sell the Security at public or private sale, with or without advertisement of the time, place or terms of sale, for cash, upon credit or for future delivery and at such price or prices as the Lender may deem satisfactory, and the Lender may be the purchaser of the Security and the Lender or any purchaser of the Security upon any such sale shall thereafter hold the same, absolutely, free from any claim or right of whatever kind (including any equity of redemption) of Debtor, who hereby specifically waives all rights of redemption or stay which Borrower has or may have under any rule of law or statute now existing or hereafter adopted. The Lender shall give the Borrower prior written notice of its intention to make any such public or private sale, which notice shall state the time and place set for the sale. Any sale shall be held at such time or times within the ordinary business hours and at such place or places as the Lender may state in the notice, provided that the Lender shall not be obligated to make any sale pursuant to any such notice. The Lender may, without notice or publication, adjourn any sale or cause the same to be adjourned from time to time by announcement at the time and place set for the sale, and such sale may be made at any time or place to which it may be so adjourned. In case of any sale of the Security on credit or for future delivery, the Security may be retained by the Lender until the selling price is paid by the purchaser, but the Lender shall not incur any liability in case of the failure of the purchaser to pay for the Security and, in case of any such failure, the Security may again be sold. The Lender, however, instead of exercising the power of sale conferred upon it by this Loan Security Agreement, may proceed by a suit or suits at law or in equity to foreclose the pledge and sell the Security. In case of any sale, the Lender may first deduct all expenses of the sale and delivery of the Security, including, but limited to attorney's fees and disbursements, brokerage commissions, transfer taxes, and also all sums paid to the Corporation pursuant to the terms of the Lease or the by-laws of the Corporation, and may then apply the remainder to any liability of the Borrower under the Note and this Loan Security Agreement, or any other obligation Borrower may have with Lender or any affiliates, and shall return the surplus, if any, to the Borrower. The Borrower agrees that the Lender shall have the right to continue to retain the Security until such time as the Lender in its reasonable judgement believes that an advantageous price can be secured for the Security and the Lender shall not be liable to Borrower for any loss in the value of the Security by reason of any delay in its sale.

7. COMPLETION OF DOCUMENTS

In connection with any sale or disposition of the Security, the Lender shall have the right to complete the incomplete Stock Power and Assignment of the Lease, which are executed and delivered along with this Loan Security Agreement, for the purpose of transferring the Stock and the Lease. The Borrower agrees the Corporation, its officers, agents or attorneys, shall incur no liability to the Borrower in the event the Corporation transfers the Borrower's Stock and Lease in accordance with the provisions of this Loan Security Agreement, or brings any proceeding to dispose or evict the Borrower from the Apartment by reason of the occurrence of an Event of Default under this Loan Security Agreement. The Corporation may refuse to effect any attempted transfer of the Borrower's Stock or Lease made without the prior written consent of the Lender.

LOAN SECURITY AGREEMENT
01/26/05                                   Page 2 of 4                              DocMagic eForms 800-649-1362
                                                                                    www.docmagic.com

Nylsa.msc.2.tem

A sale conducted according to the usual practice of banks or lending institutions selling similar security will be considered commercially reasonable.

8. VOTING THE STOCK AFTER DEFAULT

The Lender may, at its option, after an Event of Default, vote the Stock at any meeting of the stockholders of the Corporation.

9. NO WAIVER

The Borrower agrees that the Lender will not waive or lose any its rights under this Loan Security Agreement by accepting any partial or late payment(s) or any payment marked "in full satisfaction" or words of similar meaning by failing or delaying to exercise any of the Lender's rights, or by exercising any one right under this Loan Security Agreement. A waiver of any one default under this Agreement will not constitute a waiver of any other default existing at any time, whether or not it is the same or similar to the default waived. The Lender may exercise any right granted to it by law whether or not stated in the Note or this Loan Security Agreement, and the Borrower will not be entitled to any additional time to make any payment or perform any obligation under the Note or this Loan Security Agreement because of any notice the Lender may have sent or delivered to the Borrower.

10. SURRENDER OF POSSESSION

The Borrower understands that if any sale of the Security occurs under this Loan Security Agreement, the Borrower will vacate and surrender the Apartment on demand and the Lender will have the right to maintain summary or other proceedings to obtain such possession if the Borrower shall fail or refuse to surrender possession.

11. POWER OF ATTORNEY

The Lender is hereby given the power, which the Borrower cannot cancel or revoke and which will last for as long as all amounts the Borrower still owes under the Note or this Loan Security Agreement are not paid in full, to act as the Borrower's attorney in fact or agent for the Borrower to pay any amount the Borrower has agreed to pay under the Lease and to perform all acts the Borrower has agreed to perform under the Lease and this Loan Security Agreement, in order to protect or enforce the Lender's rights in the Security and to prevent the Lease from being in default or terminated. However, the Borrower agrees that the Lender will have no obligation to do any of these things. All acts of such attorney in fact are hereby ratified and approved and such attorney in fact shall not be liable for any acts of commission or omission, or any error of judgement or mistake of fact or law.

12. PAYMENTS FOR BORROWER'S ACCOUNT

In the event the Lender makes any payments or acts on behalf of the Borrower, such payments or other expenses together with interest on them as specified in the Note will be added to the Debt and shall be payable to the Lender by the Borrower, on demand.

13. REIMBURSEMENTS FOR EXPENSES

If any action or proceeding is started by the Lender, by the Borrower, or anyone else, or if the Lender is made a party in an action or proceeding to foreclose, uphold or defend the security interest or other rights granted to the Lender by this Loan Security Agreement, all sums paid by the Lender for the expenses of any such litigation (including attorney's fees and disbursements), together with interest on the expenses at the rate stated in the Note, shall be added to the Debt and shall be payable to the Lender by the Borrower, on demand.

14. RIGHT OF SET-OFF

The Lender shall have a lien and security interest in any of the Borrower's deposit balances now or hereafter deposited with the Lender, together with full authority to set off such deposit balances against the Debt, and the Lender may at any time or from time to time at its sole and exclusive option and without notice, after the occurrence of an Event of Default, apply such deposits against the Debt.

15. SALE OF SECURITY

If the Borrower sells or transfers the Security, Lender shall require Borrower to repay in full the Debt.

16. USURY

No matter what else is set forth in this Loan Security Agreement, the Note or any other instrument executed by the Borrower evidencing or securing the obligation due under the Note, if any payment by the Borrower or act by the Borrower would result in the payment of interest in excess of the maximum rate of interest legally permissible, then the Borrower's obligation to make such payment or do such an act shall be deemed automatically reduced to such maximum rate, so that in no event will the Borrower be obligated to make any payment, perform any act or promise to do (or not to do) any act which would result in the payment of interest in excess of such maximum rate. Any such excess payments shall be applied as partial prepayments of the Debt.

17. CAPTIONS

Captions are used in this Loan Security Agreement only as a matter of convenience and do not define or describe the intent of any provision.

18. APPLICABLE LAW

This Loan Security Agreement shall be deemed to have been made in, and shall be governed by, and interpreted in accordance with, the laws of the State of New York. The Borrower hereby irrevocably consents to the exclusive jurisdiction

LOAN SECURITY AGREEMENT
01/26/05
Page 3 of 4
DocMagic eForms 800-649-1362
www.docmagic.com

Nylsa.msc.3.tem

and venue of the courts of the State of New York in the County where the Building is located. The Borrower hereby agrees that the mailing of any court process or notice in connection with the adjudication of any dispute with respect to the Note or this Loan Security Agreement, by certified mail or registered mail, return receipt requested, shall be good and sufficient service of process or notice and same force if such process or notice had been personally served upon the Borrower within the State of New York. If any provision of this Loan Security Agreement is invalid or in contravention of any applicable law or regulation, such provision shall be severable without affecting the validity of any other provision of this Loan Security Agreement.

19. **WAIVER OF AMENDMENT**
No provision of this Loan Security Agreement shall be waived, modified or amended except by an agreement in writing.

20. **BINDING EFFECT**
This Loan Security Agreement shall be binding on the Borrower (if more than one person or entity enters into this agreement with the Lender, they shall be jointly and severally liable) and shall inure to the benefit of the Lender its successors and assigns.

IN WITNESS WHEREOF, the Borrower has executed this Loan Security Agreement as of the date first above written.

_Sandy Annabi  2/14/05_  _____  _____  _____
Borrower SANDY ANNABI      Date         Borrower                Date

_____  _____  _____  _____
Borrower           Date              Borrower                 Date

_____  _____  _____  _____
Borrower           Date              Borrower                 Date

STATE OF New York      )
COUNTY OF Westchester  )ss.:
                       )

On this 14th   day of FEBRUARY, 2005   , before me personally appeared

to me known to be the person (or persons) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

_Karen Y. Bell_
Notary Public
Karen L. Bell
Notary Public, State of New York
No. 01BE5082834
Qualified in Rockland County
Commission Expires July 28, 20__

LOAN SECURITY AGREEMENT
01/26/05                        Page 4 of 4                DocMagic eForms 800-649-1362
                                                            www.docmagic.com

Nyka.msc.4.tem

Loan Number: 297152838

# ADJUSTABLE RATE RIDER
(LIBOR Six-Month Index (As Published In *The Wall Street Journal*)
- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 14th day of FEBRUARY, 2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to COLUMBIA HOME LOANS, LLC

("Lender") of the same date and covering the property described in the Security Instrument and located at:

245 RUMSEY ROAD, APT # 1B, YONKERS, NEW YORK 10701
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 7.500 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the 1st day of MARCH, 2010, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01  Page 1 of 3

DocMagic eFarms 800-649-1362
www.docmagic.com

Us3138.rid.1.tem

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 625/1000 percentage points ( 3.625 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the each Change Date will not be greater than 12.500 % or less than 3.625 %. My interest rate will never be greater than 12.500 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee

---

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                    Page 2 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

Us3138.rid.2.tem

to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
SANDY ANNABI            -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                    Page 3 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

Us3138.rid.3.tem

# PREPAYMENT RIDER

Loan Number: 297152838

Date: FEBRUARY 14, 2005

Borrower(s): SANDY ANNABI

THIS PREPAYMENT RIDER (the "Rider") is made this 14th day of FEBRUARY, 2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of COLUMBIA HOME LOANS, LLC

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security Instrument and located at

245 RUMSEY ROAD, APT # 1B, YONKERS, NEW YORK 10701
[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PREPAYMENT CHARGE
The Note provides for the payment of a prepayment charge as follows:

5 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.
If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase. If this Note provides for a variable interest rate or finance charge, and the interest rate or finance charge at any time exceeds the legal limit under

MULTISTATE PREPAYMENT RIDER
6/03
Page 1 of 2

DocMagic eForms 800-649-1362
www.docmagic.com

Uspr.ppr.1.tem

which a Prepayment penalty is allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under applicable law.

If within TWELVE ( 12 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)  _____ (Seal)
SANDY ANNABI         -Borrower                              -Borrower

_____ (Seal)  _____ (Seal)
                     -Borrower                              -Borrower

_____ (Seal)  _____ (Seal)
                     -Borrower                              -Borrower

MULTISTATE PREPAYMENT RIDER
6/03                          Page 2 of 2          DocMagic eForms 800-649-1362
                                                         www.docmagic.com

Uspr.ppf.2.tem

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                Case No.: S1 10-cr-0007 (CM)

---

United States of America,

                                                                                                         Plaintiff,

- against -

Sandy Annabi,

                                                                                          Defendants.

---

# PETITION FOR ADJUDICATION OF INTEREST UNDER 21 U.S.C. §853(n)



FRENKEL LAMBERT WEISS WEISMAN & GORDON, LLP

Attorneys for Plaintiff
One Whitehall Street – 20th Floor
New York NY  10004
(212) 344-3100
F (212) 624-9350
Our File No.: 01-063038-F00

---

To:                                              Service of a copy of the within is hereby admitted.

                                                                                                     Dated: May 2013

Attorneys for

---

                Yours, etc.

                FRENKEL LAMBERT WEISS WEISMAN & GORDON, LLP