FC7HMAGS                       Sentence

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        10 CR 007 (CM)
                                          10 CR 1170 (CM)
5   ANTHOY MANGONE,

6                  Defendant.

7   ------------------------------x

8                                        New York, N.Y.
                                         December 7, 2015
9                                        10:00 a.m.

10

    Before:
11
                       HON. COLLEEN MCMAHON,
12
                                         District Judge
13

14                        APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    PERRY A. CARBONE
17  JAY McMAHON
         Assistant United States Attorneys
18
    DOAR RIECK KALEY & MACK
19       Attorneys for Defendant
    JAMES R. DeVITA
20
    ALSO PRESENT:   MICHAEL MAZZUCA, FBI agent
21                   ROBERT SILVERI, FBI agent
                     JOHN  SCATENATTO, IRS agent John  Scatenatto.
22                   DELEASSA PENLAND, DOJ Investigator

23

24

25

FC7HMAGS                          Sentence

1          (Case called)

2          MR. CARBONE:  Your Honor, on behalf of the government,

3    Assistant United States Attorneys Perry Carbone, Jay McMahon.

4    Sitting with us at counsel table are FBI special agents Michael

5    Mazzuca, Robert Silveri, IRS special agent John Scatenatto, and

6    former IRS revenue agent and U.S. Attorney's Office

7    Investigator Deleassa Penland.  And seated outside the well

8    today is former Assistant United States Attorney Jason Halpern.

9          THE COURT:  Good morning.

10          MR. DeVITA:  Good morning, your Honor.  For

11    Mr. Mangone, James DeVita with the firm of Doar Rieck Kaley &

12    Mack.

13          THE COURT:  Good morning.  You may be seated.

14          Going to have to hold off for a second, folks.  I

15    can't do anything without the presentence report, and I don't

16    have the presentence report.

17          MR. DeVITA:  If it would help, your Honor, I could

18    hand up my copy.

19          THE COURT:  If anybody can hand up a copy, it would be

20    great.  Thank you.

21          This matter is on for sentencing under docket Nos. 10

22    Criminal 007 and 10 Criminal 1170, United States of America v.

23    Anthony Mangone, the defendant having been found guilty by plea

24    to the following offenses under docket No. 10 Criminal 007:

25          One count of conspiracy to commit bribery, a Class D

FC7HMAGS                          Sentence

felony in violation of 18 United States Code, Section 371.
This crime carries a statutory maximum penalty of five years'
imprisonment, three years' supervised release, a $250,000 fine
or twice the gross gain to the defendant or loss to
identifiable victims other than the defendant, and a $100
special assessment.

        One count of aiding the receipt of corrupt payments, a
Class C felony in violation of 18 United States Code, Section
666(b)(1)(B).  This crime carries a statutory maximum sentence
of ten years' imprisonment, three years' supervised release, a
$250,000 fine, and a $100 special assessment.

        One count of extortion -- you got it?  Good.  You can
give Mr. Carbone back his.

        One count of extortion, a Class C felony in violation
of 18 United States Code, Section 1951(a).  This crime carries
a statutory maximum of 20 years' imprisonment, three years'
supervised release, maximum fine of $250,000 or twice the gross
gain or loss, and a $100 special assessment.

        One count of travel act bribery, a Class D felony, in
violation of 18 United States Code, Section 1952(a)(3).  This
crime carries a statutory maximum sentence of not more than
five years' imprisonment, three years' supervised release,
$250,000 or twice the gross gain or loss fine, and a $100
special assessment.

        In connection with docket No. 10 Criminal 1170, the

1   defendant has pleaded guilty to one count of tax evasion, a

2   Class D felony in violation of 26 United States Code,

3   Section 7201.  This crime carries a statutory maximum penalty

4   of five years' imprisonment, three years' supervised release, a

5   $100,000 fine, and a $100 special assessment.

6          In connection with today's proceedings, I have

7   received and reviewed the presentence report prepared by United

8   States Probation Officer Walter J. Quinn.  It is dated

9   November 23, 2015.  I have a sentencing memorandum and notice

10  of intent to move pursuant to Section 5K1.1 of the sentencing

11  guidelines from the United States Attorney's Office.  I have a

12  sentencing memorandum submitted by Mr. DeVita on behalf of

13  Mr. Mangone, together with 109 pages of exhibits, consisting of

14  a large number of letters submitted by family and friends of

15  the defendant on his behalf.

16         I have received two supplemental submissions from

17  Mr. DeVita, one dated November 24, 2015, with a supplemental

18  sentencing memorandum with a few more letters from friends,

19  relatively new friends, people who have known Mr. Mangone for

20  about the last three years since he began cooperating in this

21  case, and a second supplemental sentencing memorandum

22  containing a letter from a Mr. Egan.

23         I received a letter in October from a Judith Nolan.  I

24  don't know, Mr. DeVita.  I can't remember if it's a friend, and

25  it was in the file.  And I received a letter that I sent to

FC7HMAGS                        Sentence

1    counsel last week.

2              THE DEPUTY CLERK:  To which Mr. DeVita -- I didn't see

3    this -- asked you to look at that.

4              THE COURT:  And I received a letter last Friday which

5    I sent to the lawyers for both sides.  It was an unsolicited

6    letter from an individual resident of Putnam County named

7    Barbara Burhans who was a civil litigant in the White Plains

8    courthouse, and she obviously has an ax to grind.  She also

9    says some very profound things.  We looked at the docket sheet

10   in her case.  Mr. DeVita has handed up one particular order

11   that he wants me to look at which the order that Judge Robinson

12   entered when he declined to recuse himself from the case.

13             MR. DeVITA:  Correct, your Honor.

14             THE COURT:  Okay.  Is there anything else I should

15   receive in writing prior to today's proceedings from the

16   government?

17             MR. CARBONE:  Not that we're aware of, your Honor.

18             THE COURT:  From the defendant?

19             MR. DeVITA:  No, your Honor.

20             THE COURT:  Has the government reviewed the

21   presentence report?

22             MR. CARBONE:  Yes, we have, your Honor.

23             THE COURT:  Any additions, deletions, or corrections?

24             MR. CARBONE:  None.

25             THE COURT:  Does the government presently make the

1    motion contemplated by its submission?

2          MR. CARBONE:  Yes, your Honor.  At this time the

3    government moves for a downward departure from the applicable

4    guideline range based upon the extraordinary, substantial

5    assistance that the defendant provided in connection with the

6    successful prosecution of seven individuals.  As outlined in

7    our brief, the cooperation provided by Mr. Mangone was

8    complete, it was fruitful, and it spanned over five years.

9          Your Honor, I'll just briefly address his cooperation

10   in light of the five non-exhaustive factors set forth in

11   Section 5K1.1.  First, the usefulness of the defendant's

12   cooperation.  Judge, I think the defendant's cooperation was

13   remarkably useful, primarily because of the nature of the

14   crimes that he assisted the government to prosecute.  When you

15   arrest someone driving a truckload of cocaine after there have

16   been wiretaps and some undercover buys, there's really little

17   doubt about the defendant's guilt, and there's powerful

18   incentive for that individual to cooperate.  Corruption and

19   fraud cases, as your Honor is aware, obviously much, much

20   different.  It's usually less about what happened and more

21   about the defendant's mens rea, his mental state, because the

22   government has to prove corrupt or fraudulent intent.

23         As your Honor's also aware, these cases, in large

24   part, involve transactions that are conducted based on a nod

25   and a wink.  And it's very, very difficult for the government

FC7HMAGS                    Sentence

to have narrators or people who are involved in the

transactions cooperate.  So having a narrator, someone like

Mr. Mangone, who can walk you through the schemes is both

unusual and extraordinary.  So it was very, very useful.

        Factor two, the truthfulness, completeness, and

reliability of the information provided.  Judge, in the

government's view, Mr. Mangone's cooperation was certainly

truthful and it was certainly complete.  From the very

beginning of this case and throughout the entire period of his

cooperation, we never had reason to doubt the truthfulness of

anything Mr. Mangone told us.  And I'd point out that he told

us a lot of things that were personally very embarrassing to

him, things that it is unlikely that we ever would have

discovered but for him bringing them to our attention.  And I

think that demonstrates how forthright and completely truthful

he was.

        THE COURT:  Mr. Carbone --

        MR. CARBONE:  Yes.

        THE COURT:  -- I've been told -- never worked for your

office -- I've been told it's the policy of your office to

charge a cooperator with all of the crimes that he reveals that

he's committed.  That doesn't seem to be the case in

Mr. Mangone's case.  Is there an explanation for that?

        MR. CARBONE:  Judge, I think it is the case to the

extent that there were federal violations.  And I think if you

FC7HMAGS                    Sentence

```
1   look at the plea agreement, to the extent that Mr. Mangone
2   committed other crimes that may have been violations of --
3           THE COURT:  The crimes with Mr. Libous, the crimes
4   with Mr. Leibell, he didn't commit any federal crimes in
5   connection with those?
6           MR. CARBONE:  Judge, he certainly.
7           THE COURT:  Really?
8           MR. CARBONE:  Our position --
9           THE COURT:  Really?  Conspiracy?  You guys charge
10  conspiracy for everything.  You guys charge conspiracy if two
11  people are walking down the street together.
12          MR. CARBONE:  I think that might be a minor
13  overstatement.
14          THE COURT:  It's a bit of an overstatement,
15  Mr. Carbone.  I'll grant you that.
16          MR. CARBONE:  Judge, in our view, it all comes down to
17  intent.  You have to have somebody -- in order to make them
18  plead guilty to a crime, they have to have had --
19          THE COURT:  You don't think he intended to steal the
20  money from Putnam County?  I'm just curious.  I'll lay my cards
21  on the table, Mr. Carbone.  This is an extraordinary,
22  extraordinary plea deal.  I've never seen a plea deal like this
23  from your office.  And you and I have done a lot of these plea
24  deals together.  And I have simply never seen a plea deal where
25  the guideline sentence was so absurdly low.  Haven't seen it.
```

1              MR. CARBONE:  Judge, the plea agreement is clear.  It

2    lays out all the bad conduct that we were aware of.  And your

3    Honor's entitled and permitted to take all that into

4    consideration.  It is the policy of our office, Judge, that we

5    don't go back and try to calculate a guideline for everything

6    bad that a defendant did during his entire life.  It's out

7    there.  It's all laid out for you to see.  Your Honor presided

8    over the trial.  It's in the plea agreement.  You know about

9    all the bad conduct, and you can consider it.  Nobody's

10   suggesting that you shouldn't.

11             This is not a lenient plea deal.  He pled to each and

12   every count in indictment No. 007 for which he was charged,

13   with the exception of the currency transaction reporting count

14   which he denied willfulness, and we had no evidence -- we

15   credited his lack of willfulness on that count.  So we agreed

16   to dismiss it.  It has no effect on the guidelines.  As for the

17   tax charge, your Honor, we investigated Mr. Mangone.  We

18   investigated our own cooperator, and he pled guilty to tax

19   evasion, a multiple-year tax evasion scheme.  So I don't think

20   this is a lenient plea deal.

21             THE COURT:  Has he repaid any of the taxes?

22             MR. CARBONE:  He has filed his returns and --

23             THE COURT:  Has he paid any of the taxes?

24             MR. CARBONE:  Your Honor, Mr. DeVita can address

25   whether he's in a financial position --

FC7HMAGS                         Sentence

1              THE COURT:  The answer is no.  Okay.  It was a

2      yes-or-no question, Mr. Carbone.

3              MR. CARBONE:  And the answer is not that I'm aware of.

4              THE COURT:  Thank you.

5              MR. CARBONE:  The nature and extent of the assistance

6      provided.  Judge, over the course of over five years,

7      Mr. Mangone provided information, as I said, that resulted in

8      the successful prosecution of seven individuals: three New York

9      state senators, a chief of staff, a lawyer, a councilwoman, and

10     a chairman of the Yonkers republican party.  He testified

11     twice, underwent vigorous cross-examination in both of those

12     cases, and he met and he spoke with the government more times

13     than we can count.  He made himself available anytime we asked.

14             Fourth factor, injury to the defendant or his family

15     as a result of the efforts.  Now, this is not a case where the

16     defendant was at personal physical risk of harm, nor his

17     family.  It's not a drug case, not an organized crime case.

18             THE COURT:  It's worse.

19             MR. CARBONE:  But I think --

20             THE COURT:  It's worse.  It's a political corruption

21     case.

22             MR. CARBONE:  And in that we don't disagree, your

23     Honor.

24             THE COURT:  Good.

25             MR. CARBONE:  But as to this factor, I think it's fair

FC7HMAGS                        Sentence

 1   to consider injury to the defendant's family.  And bear with me

 2   for a second.  You may not have any --

 3          THE COURT:  I've never had you argue that in a drug

 4   case, Mr. Carbone.  That's odd.  I've never had you argue that

 5   in an organized crime case.  I've always had you say:  You

 6   know, that's collateral damage.  That's just the way it works.

 7          MR. CARBONE:  It is, your Honor.

 8          THE COURT:  The defendant should have thought about

 9   his family before he committed the crime.

10          MR. CARBONE:  I don't disagree, Judge.  But my only

11   point is that Mr. Mangone's family, his wife and his young

12   children, didn't commit the crimes; and they certainly -- and I

13   think it's fair, under the guidelines, to ask the Court to

14   consider the way these cases were rolled out, seven cases over

15   the course of five years rolled out.  Each time there was a

16   significant development in those cases, there's another round

17   of media stories.  And I'm not suggesting in any way that the

18   media treated anyone unfairly here.  But I am suggesting that

19   Mr. Mangone's family, his wife, his children, know what the

20   Internet is, and they were subjected to the humiliation each

21   and every time that a new case is rolled out.  And it's a

22   factor, that's all, under the guidelines.

23          Finally, your Honor, the timeliness of the assistance.

24   Within weeks, weeks of the return of the initial Annabi

25   indictment, which was in January of 2005 --

FC7HMAGS                          Sentence

1          THE COURT:  '10, 2010.

2          MR. CARBONE:  That's what I meant, '10.

3          -- Mr. Mangone, reached out to us and expressed his

4   desire to cooperate, his desire to make it right.  It wasn't a

5   long, drawn-out process.  He came in immediately, repeatedly.

6   And it took a few sessions to draw out all the information that

7   he had to provide to the government, but he did it.  He

8   immediately came in, and he gave complete and truthful

9   proffers.  So his cooperation was extraordinarily timely.

10          So, your Honor, in sum, we ask that the Court credit

11  Mr. Mangone for his extraordinary assistance that he provided

12  in this case and reward him consistent with those efforts.

13  Thank you.

14          THE COURT:  Thank you, Mr. Carbone.

15          Mr. DeVita, good morning.

16          MR. DeVITA:  Good morning, your Honor.

17          THE COURT:  Have you gone over the presentence report

18  with your client?

19          MR. DeVITA:  I have, your Honor.

20          THE COURT:  Any additions, deletions, or corrections

21  that you would like to make to the presentence report?

22          MR. DeVITA:  No, your Honor.

23          THE COURT:  Okay.  Mr. DeVita, I would hear you on

24  sentencing.

25          MR. DeVITA:  Your Honor, I would like to address,

FC7HMAGS                        Sentence

1    first, your observation that this was a lenient plea.  Your

2    Honor mentioned the policy that, frankly, is a policy that I

3    disagree with.  It was not a policy --

4              THE COURT:  So do I, but it is the policy.  I've been

5    told that over and over again.

6              MR. DeVITA:  I understand.  I think it is a policy

7    that has no point, because there is nothing that has been

8    concealed from the Court about his misconduct.  There is

9    nothing that your Honor's not aware of, that the government is

10   not aware of.  And the sentencing exposure to what he has pled

11   guilty to is sufficient that, if your Honor deems it

12   appropriate, you can go very high; and, therefore, I think that

13   the fact that the plea may not include things that -- and I

14   will mention your Honor brought up specifically the Putnam

15   County situation.  None of the other partners of his firm were

16   prosecuted for that situation.  His role in that -- I'm not

17   excusing it -- but was, compared to the others, rather minor.

18   He was a junior partner in the firm.  He was not directly

19   involved.  He shared --

20             THE COURT:  Junior partner?  Mr. DeVita, it was a

21   three-lawyer firm.  Come on.  Give me a break.

22             MR. DeVITA:  I understand that, your Honor.  I'm

23   simply saying he's not being singled out for special treatment

24   regarding that.  There are other issues that the government,

25   frankly, looked at carefully in terms of the pressure that was

FC7HMAGS                    Sentence

1    put on the firm.  And I don't mean to excuse any of that.  I'm

2    simply saying that I don't think that it really makes a

3    difference in this case that he didn't plead guilty to that

4    when your Honor knows from his own testimony, from his own

5    words, that that conduct occurred that nobody knew about until

6    he told the government.

7              THE COURT:  It makes two differences.  First of all,

8    there really can be no dispute that this is not the kind of

9    plea deal that the government ordinarily gives; and, second --

10   maybe that's because of the government's great zeal to get

11   political corruption witnesses.  I don't know, because the

12   government gets to make its own deals.  But the second is if he

13   had to do something more like the kind of deals that you and I

14   all too frequently see and that neither one of us likes, his

15   guidelines would be a lot higher and that, in turn, would mean

16   that a break from the guidelines would be easier to give, so to

17   speak.  Okay.  So there's no doubt in my mind that it was done

18   to try to control what was going to happen here today.

19             MR. DeVITA:  Your Honor, I think you don't give enough

20   credit to the government for realizing they can't control your

21   Honor any more than I can control your Honor.  Your Honor makes

22   your own decisions.  Your Honor has all of the facts.  And I

23   don't attribute that motive to the government.  I really don't.

24   I think that one of the things -- and I will say I've been

25   doing this a long time, and I don't say lightly that there are

1    unique features to cases, because I've seen a lot and I've done

2    a lot.  In this case, I think one of the things that motivated

3    the government was the uniqueness in the way that this

4    cooperation came out and unfolded.  It was spontaneous.  There

5    were sessions, upon hours hours of confession, nothing less.

6    It was remarkable to see and participate in.  It was

7    spontaneous.  There was no attempt at self-justification.

8    There was no attempt at rationalization.  I think, no question,

9    that the arrest triggered that, but there's no question in my

10   mind that sooner or later that would have happened.  And I

11   think that it's more likely a recognition of the enormous

12   unburdening and purging that he went through in this process

13   than it is to try and shackle your Honor.

14        There's nothing here that prevents your Honor from

15   doing what your Honor sees fit.  I don't think that you're

16   being fair to Mr. Carbone, frankly, by saying that he's trying

17   to control the outcome, because the information is there.  Your

18   Honor knows it.  He's testified to it in open court twice.

19   There are no secrets here.  No one's hiding the ball from your

20   Honor.  I think that Mr. Carbone sat through sessions that I

21   sat through that were, in my experience, remarkable and unique.

22   And it was hours on end, multiple sessions.  He started in

23   March; it ended with a cooperation agreement that was signed in

24   November.  And there were hours upon hours when he sat and

25   unburdened himself, laid out information that the government

1    had no clue, may never have found out but for his cooperation.

2    So I think that that is more likely an explanation of the way

3    the case was pled than any attempt to try and shackle your

4    Honor, because there is no way to do that.  There really isn't.

5           The other aspect of this case, your Honor, that was

6    unique, in my experience, is the amazing outpouring of letters,

7    many unsolicited.  As I say, I've been doing this a long time,

8    I've never seen a flood of -- and not puff letters, Judge.

9    Information that was specific about very generous, kind,

10   amazing things that Mr. Mangone has done through his life.  As

11   I said in my sentencing memo, I'm not condoning anything that

12   he did or denying anything that he did that it was wrong, but

13   there's a fundamental goodness and decency that -- I've known

14   him for five years.  Until I read those letters, I didn't

15   really know him.  Frankly, I couldn't help thinking of one of

16   my favorite movies, "It's a Wonderful Life," when I was reading

17   those letters.  It just brought home to me a side of him that I

18   hadn't seen.  I believed that he was a good man.  I believed

19   that he had unburdened himself, but to see what he's done and

20   what he's been through, I think I've never had an experience

21   like that in my 40-plus years of practicing law to see the kind

22   of outpouring for a man in his position that I saw in this

23   case.  So those are the unique factors.

24          Other factors, your Honor, his family needs him.  His

25   family really needs him.  His son needs him.  I don't want to

1    go into detail on that.  It's in the submission.  But it's

2    important.  I think that in the five and a half years that have

3    passed since he was arrested, he's made a rehabilitation that

4    is to be lauded and to be, I think, fostered rather than

5    defeated.

6         And I think that the family business, the

7    restaurant -- his mother's here -- the restaurant that they've

8    started, I was really impressed with the words of the police

9    chief from Irvington who says it's a family institution in the

10   community.  And it's something that is a credit to him to have.

11   He's the moving force behind it; and he's, I think, essential

12   to it.  And I think that it's essential to his ability to be

13   rehabilitated.  I think that there is a real risk that the

14   family business would not be able to survive his being

15   incarcerated, and I think that would be a step in the wrong

16   direction for him to become and continue to be moving in the

17   path of a contributing member of our society.

18        I think that -- and Mr. Carbone has touched on this --

19   he has been punished.  He testified in two trials, three years

20   apart, with as a substantial amount of publicity each time

21   reopening the wounds.  That, I think, is as your Honor said,

22   you know, he should have thought of that before.  But I can

23   tell you this:  There isn't a day that has gone by that he

24   hasn't said that to himself, that he put his family in this

25   situation; that he put his family through this.  He knows that,

FC7HMAGS                      Sentence

1    and I think that he beats himself up about that every day.  And

2    he suffers from that as well, and that's not -- I mean, your

3    Honor sees people who come here before you who profess remorse,

4    but it's not as profound as the remorse that is here; and

5    sometimes it's a sham.  This man is as remorseful as any

6    defendant that has ever stood before your Honor, I believe.

7              THE COURT:  Really?

8              MR. DeVITA:  I think that those are things that really

9    weigh in favor of a sentence that does not put Mr. Mangone into

10   jail, into prison.  I don't think it serves any useful purpose.

11   I think that the example that he has set since his arrest and

12   his spontaneous decision to cooperate has helped this U.S.

13   Attorney's Office in what has been a very successful campaign

14   against corruption in state government and local government.  I

15   think that it's fair to say he's a trailblazer in that respect.

16   And that by rewarding him sufficiently for coming forward and

17   for exposing what he has exposed, your Honor will continue to

18   encourage people in his position to come forward and not

19   discourage the kind of cooperation that has resulted in the

20   kind of success that has been demonstrated in this case.

21             THE COURT:  Thank you, Mr. DeVita.

22             MR. DeVITA:  You're welcome, your Honor.

23             THE COURT:  Anything else from the government?

24             MR. CARBONE:  No, your Honor.

25             THE COURT:  Mr. Mangone, do you have anything you want

FC7HMAGS                        Sentence

1    to say to me before I sentence you?

2              THE DEFENDANT:  Yes, your Honor.  Thank you.

3              Your Honor, all of my behavior has been

4    self-inflicted.  I have not tried to run away from it.  I faced

5    it head on.  And as a result of that, I've put my family in a

6    terrible position.

7              I had the pleasure of appearing before your Honor on

8    several instances.  This is a much more difficult time for me.

9    In fact, this time is probably the first time my mother ever

10   saw me in a courtroom and probably, hopefully, the last time

11   she ever sees me in a courtroom.

12             THE COURT:  Certainly in this position, Mr. Mangone.

13             THE DEFENDANT:  Without a doubt, your Honor.  So it's

14   not been an easy 72 months now.  We've gone through many losses

15   in our family.  And during that same period of time, I've tried

16   to make myself a better person; to allow my children to

17   understand that as a result of your actions, there are

18   consequences.  So I'm here before you today to face those

19   consequences.

20             I'd like to apologize to the members of law

21   enforcement that are here.  It's not an easy task.  I saw it

22   firsthand the amount of work that they put into these cases.

23   And I know that the Assistant United States Attorney,

24   Mr. Carbone, said that these are not easy cases to make.  There

25   is a lot of surreptitious activity that they're not aware of.

FC7HMAGS                          Sentence

1    And I tried to do the best I could to explain to them the role

2    of public corruption.  I'm not proud of what I've done, and

3    each day I do, in fact, beat myself up for my behavior.

4            I'd like to apologize to the members of my family that

5    are here.  They certainly didn't deserve the terrible exposure

6    that I was responsible for.  And most important, I want to

7    apologize to my son.  He grew up much faster than I ever wanted

8    him to.

9            And with that, your Honor, I fall before you.  Thank

10   you.

11           THE COURT:  I was very sad, Mr. Mangone, when I saw

12   your name at the head of that indictment.  We had had several

13   perfectly pleasurable professional encounters when I was

14   sitting up in White Plains.  It grieved me to see your name at

15   the head of that indictment.

16           There are two things about this case that make me

17   physically ill.  One of them is the rot in our government that

18   has been exposed by the series of prosecutions that are

19   continuing even today.  The other is dirty lawyers.  I take it

20   very personally when a lawyer commits crimes, especially when

21   he uses his position as a lawyer to commit crimes.

22           By the way, my father was a lawyer.  My brother served

23   his country for over 20 years as a judge advocate in the Navy.

24   The young people that I train as law clerks are lawyers.  Most

25   of my best friends are lawyers.  And we're, all of us, trained

1    in the law.  We, all of us, including you, took an oath to

2    uphold the law and to be fiduciaries for the law, which is the

3    only thing that stands between civilization and anarchy.  And

4    for that reason, I hold lawyers to a high standard, and I'm

5    really angered when I encounter lawyers who have turned our

6    distinguished profession into a joke and who sully all of us in

7    the minds of the public.

8           You, Mr. Mangone, were a dirty lawyer for many, many

9    years.  The story of your career is just a truly pathetic one.

10   You were involved as a very young lawyer in election fraud and

11   falsifying ballots.  And when you were facing the possibility

12   of indictment, you went in to the grand jury, as was your right

13   under state law, and you lied.  And you then testified at a

14   trial of Mr. Wedra, and you lied.  And as a result of your

15   lies, you escaped any punishment for the crime that you

16   committed and you kept your law license which you richly

17   deserved to lose.  And getting away with criminal behavior just

18   made it easy after that.  It made you brazen.  You joined a law

19   firm.  You cheated your clients, one of which happened to be a

20   public entity whose officials took your bribes and paid your

21   inflated bills with taxpayer money.  You hired a state

22   senator's son, and you paid him an inflated salary and allowed

23   him to represent clients even though you knew, or quickly

24   ascertained, that he was less than competent.  You concealed

25   the participation of a convicted felon in a transaction in

FC7HMAGS                    Sentence

1    which he was barred by law from participation.  You took money

2    from attorney trust accounts and put it into your personal bank

3    account and then used it to cover your gambling debts.

4    Mr. Siano summed it up in his closing argument quite neatly.

5    You committed tax fraud, betrayed your clients, bribed public

6    officials, and cheated your own law partners.  And yet you have

7    never been convicted of a crime until now.  You got away with

8    quite a bit.

9           Your guideline sentence of 37 to 46 months is based,

10   in part, on the fact that you've never been convicted of a

11   crime.  The fact that you've escaped conviction for your many

12   crimes puts you in Criminal History Category I alongside people

13   who are being sentenced for the first and only crime they've

14   ever committed.  If ever someone deserved to be sentenced in

15   Criminal History Category VI as a career criminal, I think you

16   do because your career was to commit crimes.  This is one of

17   the great flaws of the sentencing guidelines, one of the

18   reasons I, and many other judges, dislike it so.  It rewards

19   people like you who have lived lives of crime but never been

20   caught, people who have gotten away with it.  Your guideline

21   sentence, 37 to 46 months, actually represents a real break to

22   you in that respect, and I look upon it as such.  It is both

23   technically correct and undeservedly low.  It understates your

24   criminal history and would, in my estimation, require an upward

25   departure if I were sentencing you after a trial.

1          Now, it's true that your life of crime has been put to

2     one very good use.  Because you knew all about the skeletons in

3     their closets, you were able to help the government obtain the

4     convictions of some of the most powerful men in New York state:

5     Thomas Libous; Vincent Leibell; even your great patron,

6     Nicholas Spano.  You brought them down.  You made the

7     government's case against the men who made you what you were.

8          You also testified at the trial of Sandy Annabi and

9     Zehy Jereis.  I listened to your testimony.  And although I was

10     required to accept the jury's verdict, I formed my own judgment

11     about it, and it was not an entirely favorable judgment.  You

12     said things at the trial that were demonstrably false or

13     contradicted by indisputable evidence, even by records of the

14     Department of Homeland Security.  The government excused this

15     as faulty recollection.  I'm not so sure I accept that

16     explanation.  But the fact that you testified incorrectly, to

17     put the best spin on it, did not in the end change the fact

18     that Annabi and Jereis were miscreants.  They broke the law,

19     and I put Sandy Annabi in jail for six years.  But as I said at

20     her sentencing, the public corruption aspect of her case was

21     the least of what she did to deserve imprisonment.  It factored

22     into her sentence but only in a minor way.  I put Zehy Jereis

23     in jail for four years for being your kind of political

24     operative.  Zehy Jereis was not a lawyer, to the best of my

25     knowledge, and you, sir, were.  In my rank ordering of the

FC7HMAGS                     Sentence

1    defendants in that case, this case, my case, you were the

2    worst.  You deserve the greatest punishment.  Had you not

3    cooperated and been convicted after a trial, you would have

4    gotten the greatest punishment.

5         I have a lot of lovely letters from people that you

6    have been good to, principally your family, close friends, many

7    of them new friends, people who didn't know you in your old

8    life, people who know you in your new life.  It is wonderful

9    that your family and your friends love you.  It is good to know

10   that you are good to the people who love you.  They asked me to

11   take pity on you because they believe that at heart you are a

12   good person and one who has learned his lesson.  And

13   Mr. DeVita, who has done very, very well by you indeed, asked

14   me to take pity on you because of them.

15        I always look at those letters.  I appreciate what

16   people said.  I have to tell you, Mr. Mangone, lawyer to

17   lawyer, I'm rarely moved by them when it comes to the

18   sentencing of a defendant like yourself, especially a defendant

19   like yourself, who comes from a good family, salt-of-the-earth

20   people is how you described your parents, who did not lack for

21   anything essential in your upbringing, not for food, not for

22   shelter, not for love, not for attention.  You had the

23   advantage of a fine education at excellent schools, loving

24   parents, a loving wife.  Most of the defendants I see don't.

25   You can't say that about them, Mr. Mangone.

FC7HMAGS                    Sentence

1          And here is why these letters rarely move me.  It is

2    easy to be good to the people who love you.  I would expect

3    those people to sing your praises.  And when they say that you

4    are a man who is a fundamentally good man, they are speaking

5    the truth as they know it; but the truth, Mr. Mangone, as you

6    and I know, is much more complicated.  The truth is that for

7    virtually your entire adult life until 2010, you were

8    fundamentally a very bad person.  You did a lot of very bad

9    things.  You hid that from the ones you loved.  And I can't

10   look at you through their rose-colored glasses.

11         Mr. DeVita thought that this was a unique and

12   inspiring group of letters.  I would be more influenced by this

13   pile of letters if it contained any missives from people who

14   are not your family and friends, who have good things to say

15   about you and especially about what you accomplished in your

16   career.  While I'm sure that Mr. DeVita did his best, but the

17   defense submission is woefully short on such letters.  Sitting

18   here today, I can't recall a single letter from a client who

19   wanted to tell me how he benefited from your good and faithful

20   service or from citizens or civic leaders commending anything

21   good that you accomplished for the people of Yonkers or

22   Westchester or Putnam during all those years when you were so

23   intimately involved in local politics.  Sure, I probably am not

24   remembering one or two, and Mr. DeVita can correct me if I miss

25   one or two.

FC7HMAGS                          Sentence

1          MR. DeVITA:  Your Honor, I would mention there are two

2    letters from mothers of clients that Mr. Mangone represented

3    and speak well of his representation in a very moving fashion.

4          THE COURT:  Thank you.

5          When I sentenced Ms. Annabi, the letters were unique.

6    I received dozens of letters from Sandy Annabi's constituents

7    praising her for her service to the people of Yonkers, telling

8    me about wonderful things that she had done for them, perfectly

9    legally, people who were total strangers to her but who were

10   her constituents.  And that was the great tragedy of

11   Ms. Annabi's case, as I said at her sentencing, because she

12   accomplished so very much as a legislator, and her constituents

13   loved her for it.  These two letters -- I read them,

14   obviously -- they're slipping my mind today.  But there is no

15   chorus that's spoken up for any aspect of your career in law

16   and politics, and that speaks volumes to me.

17         Now, I did get this letter wholly unsolicited last

18   Friday from this lady, Ms. Burhans, who used to live in Putnam

19   County and who had some sort of a grievance against Putnam

20   County.  That came clear from her letter, and so I asked Jim to

21   go and see if he could find any record of the case, and he did.

22   There was a case she had brought.  She sued Putnam County in

23   this court and eventually reached some sort of a settlement, I

24   think in front of Judge Cote, and it probably didn't feel

25   sufficient to her.  So she obviously has an ax to grind, I'll

FC7HMAGS                    Sentence

grant you that.  But, nonetheless, she was a citizen of that

county.  And as a citizen and a taxpayer, she was the victim of

the criminal behavior that you and your *confederes* perpetrated

on that county, and the record should show what she said.  She

said:  I ask that you not be lenient.  Please send a message to

the multitude of white-collar criminals who steal and rob the

public of honest government that they will be held accountable.

This criminal cooperated because he wanted to get off easy.  He

and his law firm wreaked havoc in Putnam County.  I find it

nauseating that these politically connected criminals get off

so easy while a poor person of color who steals less than a

thousand dollars gets years in prison.  Corruption is so

pervasive in Putnam County because there is no real

accountability.  Please have the moral courage to hold

white-collar criminals accountable.

         This lady may have an ax to grind.  She may have her

own interests here, but she expresses, more eloquently than I

possibly could, something of what I am feeling as I sit here

and look at you.  I mentioned earlier that your guideline was

low because of your low criminal history score.  The government

tends to make up for that by having a policy of requiring a

defendant to plead guilty to all the federal crimes, not state

crimes but federal crimes, that he reveals during his

cooperation.  And that does tend, in certain cases, to get rid

of the distortion in the guidelines that I mentioned earlier.

1  The government imposed no such requirement on you, did not

2  require you to plead guilty to any crimes that you committed

3  with Mr. Libous or Mr. Leibell, and that conduct is also not

4  denominated as relevant conduct for guidelines purposes in the

5  sentencing memorandum.  That benefits you in two ways:  First,

6  it gives you a relatively low total offense level; second, it

7  does not require you to make restitution pursuant to the

8  Mandatory Victims Restitution Act to, in particular, the people

9  of Putnam County.  You're getting away with that, too, and that

10  too is a substantial break from what you could be facing today.

11          Now, I appreciate that your financial circumstances

12  are spartan, but I might be more convinced of your remorse if

13  you were making some effort, out of a sense of what's proper,

14  to repay some of what you have received because of the conduct

15  that you've testified about and talked to the government about.

16  But you've made no such effort, and none is being required of

17  you.  The government always requires that you pay your back

18  taxes, but apparently you haven't done that either, although

19  that obligation should, I'm afraid, come ahead of your other

20  obligations.  And the people are paying the freight.

21          Mr. Mangone, as far as I can tell, you devoted

22  substantially all of your adult life until 2010 to the

23  corruption of the government and the city of Yonkers and the

24  counties of Westchester and Putnam in the state of New York.

25  You wasted the law degree that was conferred upon you when you

FC7HMAGS                    Sentence

1    undermined the principles on which this country was founded,

2    principles that some of us, perhaps naively, believe should

3    undergird our government.  Every month I see people who have

4    done terrible things: drug dealers, people who alter the VIN

5    numbers on cars, people who cash somebody else's Social

6    Security check, people who watch child pornography, who rob

7    banks, people who profit in the stock market from inside

8    information.  I send the people who do these things to prison,

9    sometimes for a very long time.  I don't think I could look

10   them in the eye, Mr. Mangone, if I did not sentence you to

11   serve time for your misdeeds, because what you did is as bad as

12   anything they did and worse than what most did.  You sold out

13   your fellow citizens, and in one way or another, you took home

14   the proceeds.

15        It just doesn't seem right to me that you should get

16   off without some real punishment, even though you testified

17   against others once you, who have been described to me by

18   several people over the course of years as a very intelligent

19   man, realized that the party was finally over.  And if you

20   think that is unfair, you think it somehow undercuts the deal

21   that you made with the government in exchange for your

22   testimony, let me be really clear.  As you know from your plea,

23   you didn't make any deal with me.  And, second, but for your

24   cooperation, I can promise you, you would be doing more time

25   than Sandy Annabi, guidelines or no guidelines.  I would not

FC7HMAGS                    Sentence

1    bat an eye while handing down that sentence.  So you are

2    getting a break, a substantial break, from what I think you

3    deserve even for the conduct to which you pleaded guilty.

4              Please stand, please.  I've reviewed the presentence

5    report.  I accept and adopt as my findings its description of

6    the offense and the offense conduct.  As I mentioned, the

7    guideline calculation, which is a total offense level of 19 and

8    a Criminal History Category of I, is technically correct.  I

9    accept and adopt the offender characteristics set forth

10   beginning at paragraph 102 of the presentence report.  I grant

11   the government's motion.  There is absolutely no question that

12   Mr. Mangone satisfies the Section 5K1.1 factors.  He has given

13   the government substantial, timely, and very important

14   cooperation, and for that he should and is being rewarded.  But

15   I have considered all of the Section 3553(a) factors, and I

16   truly cannot see my way clear to giving this defendant a

17   non-incarcerative sentence.  It seems to me that an

18   incarcerative sentence is absolutely necessary, not only to

19   punish Mr. Mangone for his admitted conduct but to send a

20   message to everyone that this kind of behavior will not be

21   tolerated.  It simply will not be tolerated.  And to send a

22   message to members of the bar who might be tempted to abuse

23   their position of trust, to tell them that this kind of

24   behavior will not be tolerated.  I have no doubt that the

25   government will have little difficulty signing up cooperators

FC7HMAGS                    Sentence

1    in the future.

2             Under docket No. 10 Criminal 007 and 10 Criminal 1170,

3    I sentence you as follows, Anthony Mangone, on Counts One, Two,

4    Five, and Six on the first docket number and Count One on the

5    second docket number, to concurrent sentences of 18 months to

6    be followed by a term of three years concurrent on each count,

7    that to run, I said, concurrently.  Restitution is not

8    applicable in this case.  It's not applicable because of the

9    deal that the government cut with you.  That's the government's

10   position to make, but because of that, you will be required to

11   pay a fine of $15,000, in addition to a special assessment of

12   $100 which is due and payable immediately.  Oh, $500.  I'm

13   sorry, $500.  That's $100 on each count.

14             Mr. DeVita, do you want a recommendation?

15             MR. DeVITA:  Yes, your Honor, two requests.  One that

16   your Honor recommend that Mr. Mangone be assigned to an

17   institution called McKean Federal Prison Camp at McKean in

18   Pennsylvania.  The reason in part being that people against

19   whom he has provided information will be at the usual more

20   local institutions, and I think he's concerned about running

21   into them.  So McKean is not that far away, and I think it's

22   still in the northeast region.  But that would be the request

23   that we have.

24             THE COURT:  Happy to make that recommendation.

25             MR. DeVITA:  The other, your Honor, is that he be

1    allowed to surrender directly to the institution sometime after

2    the first of the year.

3            THE COURT:  No problem.

4            Mr. Mangone, when you're released, you will be placed

5    on three years' supervised release, and you will report to a

6    United States probation officer during that period on a regular

7    basis.  And you will do everything the probation officer says,

8    and you may do nothing that the probation officer says you

9    cannot do.

10           You are required to abide by all of the standard

11   conditions of supervision except for the mandatory drug testing

12   condition which I am suspending based on my determination at

13   the recommendation of probation that the defendant poses a low

14   risk of future substance abuse.

15           Here are the rules Mr. Mangone.  You can't commit

16   another crime, federal, state, or local.  You cannot illegally

17   possess any controlled substance.  You shall not possess a

18   firearm or any sort of destructive device.  You are required to

19   give a DNA sample for inclusion in criminal databases.  You are

20   required to obtain and maintain legitimate and verifiable

21   employment.  I hope the restaurant will still be open and you

22   can go back there.  You cannot associate with people who have

23   been convicted of crimes, which include a whole lot of your

24   former associates, or be found in places where criminal

25   activity is being planned or carried out.  You have to keep

FC7HMAGS                          Sentence

1    your probation officer apprised of your home and work

2    addresses, and you cannot change either without ten days'

3    advance notice to the probation department.  If there is an

4    emergency that requires you to vacate premises, you have 48

5    hours to notify your probation officer where you can be found.

6           As a special condition of your supervision, you are

7    required to provide your probation officer with access to any

8    requested financial information.  And you are required as a

9    condition of your supervision to pay both your taxes and the

10   fine that I am imposing upon you.  The fine and the special

11   assessment are due and payable immediately; but as I believe

12   you cannot pay them, they will be deducted from your prison

13   wages at the rate of $25 per calendar quarter or 50 percent of

14   your gross money earnings if you are in a UNICOR grade four

15   program and, when you get out, at the rate of 15 percent of

16   your gross, that is pretax, monthly earnings.  The tax payments

17   are your responsibility.  They're not included in that.  That

18   applies to the fine and the special assessment.

19          Anthony Mangone, you have the right to take an appeal

20   from this sentence that I have imposed upon you and the right

21   to counsel in connection with any appeal you would choose to

22   file.  If you cannot afford a lawyer, one will be appointed to

23   represent you without cost.

24          Do you understand?

25          THE DEFENDANT:  Yes, your Honor.

FC7HMAGS                    Sentence

1              THE COURT:  You may be seated.

2              Mr. DeVita, is there anything else that we need to do?

3              MR. DeVITA:  No, your Honor.

4              THE COURT:  Mr. Carbone, anything from the government?

5              MR. CARBONE:  Yes, your Honor.  We need to dismiss

6    Count Thirteen of indictment 10 CR 007.

7              THE COURT:  That count is dismissed as against

8    Mr. Mangone.

9              Mr. O'Neal suggests March 7 as a date for surrender.

10             MR. DeVITA:  That's fine, your Honor.

11             THE COURT:  Mr. DeVita will be notified, Mr. Mangone,

12   of your placement.  I will recommend the camp at McKean,

13   Pennsylvania.  I will also recommend, more generally,

14   Mr. Mangone should be in a minimum security facility and that

15   there is a strong preference for the Northeastern United States

16   so as to facilitate visitation by the family.

17             MR. DeVITA:  Thank you, your Honor.

18             THE COURT:  These proceedings are closed.

19             (Adjourned)

20

21

22

23

24

25